## BENSON *vs.* CROMWELL.

Where, upon a contract between B. and C. for the exchange of real estate, C. agreed to convey his property "subject to mortgages, not to exceed $4000 on each house and lot, with interest from the 1st of May" previous, to be assumed by B. as part of the consideration money; *Held,* that this was not to be construed as limiting the undertaking of B. to mortgages *then on the property ;* and that B. therefore had no right to make it an objection to the title that the original mortgages had been canceled, and others substituted in their places, payable on the 1st of November.

And where B.'s counsel, after examining C.'s title, stated the objections to it, in writing, in eight different propositions, embracing special and minute objections to the proceedings in a foreclosure suit which were supposed to be irregular; no objection being made that the court had no jurisdiction over a suit of that nature; *Held,* that it was too late to raise the latter objection, for the first time, after a suit had been brought by B. to compel a specific performance, &c.

The decision in *Hall* v. *Nelson,* (23 *Barb.* 88,) to the effect that under the constitution the county courts have no jurisdiction of a suit to foreclose a mortgage, not acquiesced in.

Benson v. Cromwell.

APPEAL from a judgment given at a special term. The action was brought for the specific performance of a contract entered into between the parties for the exchange of real estate, and to recover damages sustained by the plaintiff, by reason of the defendant's non-performance. The cause was tried before a referee, who having heard the allegations and proofs of the parties, on the 22d April, 1856, made his report, dismissing the plaintiff's complaint, and ordering that the contract be annulled and rescinded, and that a judgment be entered accordingly, and that the defendant recover of the plaintiff $209 damages, in consequence of the non-performance of the contract by the plaintiff. On motion, an extra allowance of ten per cent was made to the plaintiff, by the court. The plaintiff appealed from the judgment.

*A. Mann, jun.,* for the appellant.

*J. W. Gilbert,* for the respondent.

*By the Court,* MITCHELL, P. J. The plaintiff and defendant agreed to exchange real estate; Cromwell to convey his "subject to mortgages not to exceed $4000 on each house and lot, with interest from 1st of May, 1855, to be assumed by Benson as part of the consideration money." There were mortgages then on Cromwell's poperty; before the time for the completion of the exchange he removed those and substituted others. When the time for the exchange of papers came, the counsel for Benson objected that Benson should not assume these mortgages ; that they were made payable on the 1st of November; and that if he did, Cromwell would foreclose them the day after they became due ; or, in the words of his own counsel, he told Mr. Cromwell "that Dr. B. was *not bound to assume* the payment of any mortgages which were not on the property;" meaning at the time of the contract. Doctor Benson said his counsel advised him "that he was not bound to assume any mortgages except those on the property

at the time of the contract; and that he had acted on that advice." The contract did not describe mortgages *then* on the property as those to be assumed, nor any particular mortgages; but only specified the amount, and the time from which the interest was to run. The objection of the plaintiff was therefore groundless, and put him in fault.

The principal objection now raised, is that Cromwell's title was derived from a foreclosure in a county court. Benson's counsel, after examining Cromwell's title, stated the objections to it in writing, in eight different propositions. None of those object that no foreclosure could be had in a county court; but they are taken up with special and minute objections to the proceedings in the suit supposed to be irregular. This objection seems to have been raised only after this suit was brought; if presented in due time, it may well be that Cromwell could have obviated it by releases. He was, at all events, entitled to have notice of the objection, before a suit was brought against him by a contracting party, who was in fault in assuming and insisting on another untenable position, materially affecting the contract.

This would be a sufficient reason for that part of the judgment of the special term which declares the contract to be rescinded and annulled, and directs the instrument to be delivered up to be canceled. There is a decision in this court, in the second judicial district, to the effect that under the constitution the county courts cannot foreclose a mortgage. (*Hall* v. *Nelson,* 23 *Barb.* 88.) We do not acquiesce in that decision; but that case, with the decision in the court of appeals in *Kundolf* v. *Thalheimer,* (2 *Kern.* 593,) throws such doubt on a title thus derived, that a purchaser should not be required to take it. For this reason so much of the judgment of the special term as gives damages, costs and allowance to the defendant, should be reversed; and neither party should have costs against the other.

It is proper briefly to state our views as to the constitution. The case in the court of appeals arose in an action for an as-

Benson *v.* Cromwell.

sault and battery. Judges Gardiner and Hand each delivered written opinions, in which Judge Gardiner confines his understanding of the "special cases" in which county courts may have original jurisdiction to special *proceedings* existing in 1846, and similar special proceedings. Judge Hand's views are nearly the same, but he cautiously remarks, "perhaps it may be different in equity : for the legislature is authorized to confer upon the county judge *equity jurisdiction* in special cases. (*Art.* 6, § 14, *subd.* 4.") This prevented him and the court of appeals from being committed to extend that decision to equity cases. Judges Denio, Johnson, Crippen and Dean avoided the appearance of assent to the views of Judges Gardiner and Hand, by stating the grounds of their concurrence to be, "that the statute conferring jurisdiction on county courts in *actions of assault and battery* was unconstitutional." Judges Ruggles and Marvin took no part in the decision. In the case in the second district Justice Emott felt controlled by the decision in the court of appeals, although he does not hesitate to express his dissent from it, and shows strongly the danger of such a decision, when the law had met the approbation of the profession, and many titles depended on its being sustained. Justice Brown dissented from his associates.

The reasoning in the court of appeals admits that " *cases*" primarily means or includes *causes*. The section of the constitution referred to uses it in that sense. It says, " The county court shall have such jurisdiction in cases arising in *justices' courts* and in special cases, as the legislature may prescribe ; but shall have no original civil jurisdiction, except in such *special cases.*" The *cases* arising in justices' courts are causes—mostly common law causes—and unless " cases" includes such causes and not merely special *proceedings*, the legislature can give no appellate jurisdiction to the county courts over the justices' courts. And if the opinions in the case in the court of appeals are to be extended, that court must also pronounce any act giving an appeal to the county

court from decisions of the justices' courts unconstitutional, except in what were known as special proceedings, in 1846. Section 10 of this article in like manner uses the word cases. "The testimony in equity *cases* shall be taken in like manner as in *cases* at law." The reasoning in that case also depends on the adoption of a meaning of the word " special," allowable only where precision of language is not required, namely, " extraordinary." " Special" is contradistinguished from " general," as " species" is from " genus." This very article of the constitution makes this precise distinction, as applicable to this subject. Section 3 says, " There shall be a supreme court having *general* jurisdiction in law and equity." General was here used as distinguished from special. This court was to possess a power in law and equity as general as law and equity themselves are. There was to be no need of any specification of its powers by the legislature ; and it may be that it was intended that the legislature should have no right to limit its powers. Having thus provided for a court with *general* jurisdiction, it was proper to provide for others with special jurisdiction, or jurisdiction in *special* cases ; using the term *special* as contradistinguished from *general.* " Cases" was a more appropriate word than " causes," for it includes not only causes but special proceedings, and is more commonly used as including equity as well as common law actions, than the word " causes" is. " Cases in equity" is a more familiar phrase than " causes in equity." This would require the legislature to specify the cases in which the county courts should have jurisdiction ; and it may be that the four judges who concurred in the decision in the court of appeals, " on the ground that the statute conferring jurisdiction on county courts in *actions of assault and battery* was unconstitutional," so held because the legislature did not " specify the cases" in which the county court was to have original civil jurisdiction, but gave it in *general* terms ; terms almost as general, as to personal actions, as those in which the constitution confers

Benson *v.* Cromwell.

the powers on the supreme court, except by limiting the actions to the amount demanded and the residence of the defendants. The terms are "*civil actions,* in which the relief demanded is the recovery of a sum of money not exceeding $500, or the recovery of the possession of personal property not exceeding in value $500," &c.

But the legislature does distinctly *specify* the power to foreclose a mortgage and sell the mortgaged premises, if they are situated within that county. (*Code,* §§ 30, 33.) To this also may be added, that as the sale of mortgaged premises by advertisement had been a special proceeding in daily use before the year 1846, it did not. make it less a special proceeding within the meaning of the constitution, if the legislature authorized the same thing to be done in the county court. The constitutional right to confer the power on the county court would be clear, if the proceeding was to be there conducted in a summary way. It could not be lost, by requiring the formalities of an action in the same proceeding.

The word *special* is also used in the same sense as in the 9th section of the article, which speaks of "the *general* and *special* terms of the supreme court." Terms for special proceedings, such as were thus known in 1846 as distinguished from cases or causes, no one will say were intended. The 12th section, in the converse sense, speaks of the " general election of judges." So where it is said in section 14, that the legislature may confer equity jurisdiction in *special* cases upon the county judge, is it not plain that " cases" here means " causes in equity" as plainly as " equity *cases*" does in § 10, and then that " special" must mean such as are "*specified*" by the legislature, not thrown in mass in general terms upon the court. "Equity jurisdiction" properly applies only to formal actions in equity, and not to " special proceedings." Special proceedings in 1846 were seldom to be conducted by the chancellor or vice chancellors. They were still less frequently, *if ever,* considered a part of *equity jurisdiction.*