DAVIS *v.* SPENCER.

The jurisdiction given to the County Courts for the custody of habitual drunkards (Code, § 30, sub. 8) is general, not limited to those having estates of less than $250.

The reference in subdivision eleven of the same section to the powers of the old Courts of Common Pleas in this matter does not limit the effect of subdivision eight, but was intended to continue in the County Court cases then pending in the Common Pleas.

An agreement between the payee of a note and the maker, made with the assent of the latter's partner, to apply the indebtedness of the payee to such maker and his partner in payment of the note, operates *in presenti* as a satisfaction of the note *pro tanto*.

Whether the assent of the partner was necessary or material: *Quœre.*

ACTION by the plaintiff as the committee of Alva Davis, an habitual drunkard, on two joint and several promissory notes made by the defendant and one John A. Williams, and payable to Alva Davis or bearer. The value of the estate of Alva Davis was several thousand dollars, and the plaintiff was appointed committee of his estate by the County Court of Tompkins county. The plaintiff gave in evidence the proceedings in the County Court and his appointment as committee, and that he gave the requisite security and had entered upon the discharge of his duties. Among other objections to the proceedings, and the title of the plaintiff as committee, the want of jurisdiction in the court to entertain the proceedings was urged, upon the ground that the value of the estate of the individual proceeded against exceeded $250. Upon the trial the co-maker of the note was sworn as a witness in behalf of the defendant, and testified that the payee of the note was indebted to him, and also to himself and a former partner, for professional services to an amount exceeding the notes in suit: that after the notes became due, and before the institution of the proceedings for the appointment of a committee of his person and estate, the payee called on him and desired to have the notes arranged, saying that the defendant had gone

Davis *v.* Spencer.

to New York, and he, Williams, would have to pay the notes or get it out of the defendant, to which Williams replied that the defendant was good, and that if he had to pay the notes he would do it; that he would apply the account he had against the payee and if there was any balance against him he would pay it, and if there was any balance in his favor the payee of the notes should pay it. The payee said, "very well, any way to get my pay." There was some evidence of an assent of the partner of Williams to this arrangement, and that the plaintiff, on his appointment as committee, was informed of what had passed and did not dissent from the arrangement to set off the one claim against the other.

The action was tried by a referee, who, among other facts, found that the payee of the notes was indebted to Williams, or to him and his partner, in amounts exceeding the notes, and that so much of that indebtedness as was necessary for that purpose "was applied, on or about the 12th day of January, 1854, before the appointment of said committee, and before the commencement of this action, to the payment and satisfaction of the notes in suit, by an agreement and arrangement between the said John A. Williams and the said Alva Davis to that effect." He also found the assent of the partner of Williams to that application, and that the plaintiff after his appointment was informed of the arrangement and assented to it. As matter of law the referee decided that the notes had been fully paid, satisfied and discharged, and gave judgment for the defendant. The Supreme Court in the sixth district, without considering the ground upon which the decision was placed by the referee, affirmed the judgment for the reason that the County Court had no jurisdiction in the proceedings for the appointment of the committee.

From that judgment the plaintiff appealed to this court. The cause was submitted on printed briefs.

*Samuel Love*, for the appellant.

*Boardman & Finch*, for the respondent.

ALLEN, J. The judgment cannot be sustained upon the ground upon which it was put by the court below. By the Revised Statutes the Chancellor was charged with the care and custody of the personal estate of all idiots, lunatics, persons of unsound mind and persons incapable of conducting their own affairs in consequence of habitual drunkenness. (2 R. S., p. 52, § 1.) The jurisdiction of the Court of Chancery was a statutory jurisdiction and was exercised principally under the statutes conferring and regulating it. The court originally took jurisdiction of idiots and lunatics as the general delegate of the authority of the Crown as *parens patriæ*, and by a special authority of the Crown under its sign manual. The jurisdiction was not inherent in the Court of Chancery, or the Chancellor as Chancellor. (2 Story Eq. Jur., §§ 1362–1364, 1335–1337.) The jurisdiction conferred upon the Court of Common Pleas, and in vacation upon the first judge of the county, to take jurisdiction of applications in cases of habitual drunkards made by the overseer of the poor, when the property of the drunkard was less than $250 in value, did not interfere with or divest the jurisdiction conferred generally upon the Chancellor, but simply authorized a special proceeding in a single and special case. (2 R. S., p. 52, §§ 2–4.) The power of the Court of Chancery in these cases, from its long exercise, came to be regarded as a branch of its equity jurisdiction, and as of kin to that exercised by it over infants and others, the wards of the court. Under the Constitution of 1846 an entire new distribution of judicial powers was authorized, and the Court of Chancery was abolished and its powers were delegated to other tribunals. General jurisdiction in law and equity was conferred upon the Supreme Court, and the legislature was authorized to confer equity jurisdiction in special cases upon the county judge, and it was provided that the County Court should have jurisdiction in special cases as the legislature might prescribe. (Const., Art. 5, §§ 3, 14.) In pursuance of this authority, in the first organization of the judiciary and the distribution of judicial power, the legislature, in the "judiciary act" of 1847, enacted that the County Court should have

equity jurisdiction, amongst other things, "for the care and custody of lunatics and habitual drunkards residing in the county." (Sess. Laws of 1847, p. 328, § 31.) This act in respect to other parts of the jurisdiction conferred ·on the County Courts, and within the same reason as this particular branch, to wit, the foreclosure of mortgages, partitions, &c., has been held to be constitutional. (*Doubleday* v. *Heath*, 16 N. Y., 80; *Arnold* v. *Rees*, 18 id., 57; *Benson* v. *Cromwell*, 26 Barb., 218.) The Code, taking the place of the judiciary act, gave the County Court jurisdiction in several special cases, and, among others, "the care and custody of the person and estate of a lunatic or person of unsound mind, or an habitual drunkard residing within the county." (Code, § 30, sub. 8.) There is no restriction upon the jurisdiction, and the only condition imposed is the residence of the person proceeded against within the county. In all other respects the jurisdiction is concurrent with that of the Supreme Court. It was not intended to continue the special and limited jurisdiction of the Common Pleas concerning habitual drunkards. It is conferred in different terms with a different limitation and embraces other objects, to wit, all persons of unsound mind as well as drunkards. If the limit to the jurisdiction of the Common Pleas, as regarded proceedings against habitual drunkards, is deemed to attach to the same jurisdiction transferred to the County Court, the anomaly will exist of a jurisdiction conferred by the same clause and in the same words embracing two distinct matters, but of the same general character, in respect to one of which however it will be confined to cases where property of less value than $250 is involved; and as to the other, there will be no such limitation. The anomaly will not be the less remarkable from the fact that no reference is made in the act to the value of property as an element of jurisdiction. The reference in the 11th subdivision of the same section, to the powers conferred upon the Common Pleas, and the judges thereof, respecting habitual drunkards, was not designed and cannot have the effect to qualify the jurisdiction conferred in other and more absolute

and unqualified terms by the former subdivision. The subject of habitual drunkards was unnecessarily mentioned in subdivision 11, so far as proceedings thereafter to be commenced are concerned, but they were referred to for greater caution and to continue in the County Court, cases and proceedings which might have been commenced in the Common Pleas or before the first judge thereof; and for that purpose the reference to it may have been well. The County Court doubtless had jurisdiction to issue the commission and appoint the committee.

The judgment must be sustained, if at all, upon the report of and for the reasons assigned by the referee. The grant of general jurisdiction in the special cases mentioned by section 30 of the Code is utterly repugnant to the idea of a simple continuation and transfer of the restricted and very special jurisdiction of the Common Pleas under the Revised Statutes, and is not therefore affected by the saving provision of section 471 of the Code.

The referee has passed upon the question of fact involved in the issue, and if there was any evidence his conclusions of fact are not reviewable by this court. They were not reviewed by the Supreme Court, by which tribunal alone they were reviewable. If there was no evidence, the decision would be erroneous in law. COMSTOCK, J., in *Hoyt* v. *Thompson's Executor*, 19 N. Y., 212, says: "Questions of fact are not before us." * * "The distinction is, that the subordinate courts, in reviewing trials have the power of passing upon questions of fact as well as law, while the office of this court is to correct errors of law only." The referee has found an application of the indebtedness of Alva Davis to Williams, or Williams and Burger, with the assent of Burger, to the payment and satisfaction of the notes in suit. Upon that fact he predicates his conclusion of law that the notes were fully paid, satisfied and discharged. There was no error in the legal conclusion of the referee assuming the fact upon which it rested to have been established. Comyn's Digest, Accord, B. 4, lays down the proposition that "an accord with mutual provisions to perform

Davis v. Spencer.

is good, though the thing be not performed at the time of action; for the party has a remedy to compel the performance." This is not inconsistent with the principle that an accord, to bar an action, must be executed. The mutual promises are regarded as the execution of the accord, the satisfaction of the original contract contemplated by the parties. An agreement that a debt due or to become due shall be deemed *pro tanto*, a payment on a debt due from the creditor operates as a satisfaction. Nothing further is to be done by the parties in execution of the agreement; the debt is in judgment of law satisfied. When, by an agreement under seal between A and B, a controversy between them was submitted to arbitration, and it was agreed that the sum to be awarded by the arbitrators in favor of B should be credited on a note which A held against B, it was held that the amount and award operated as a satisfaction *pro tanto* of the note. (*Hunt* v. *Clark*, 12 John., 374.) So an agreement made after the giving of a note that a debt contemplated to be contracted by the payee with a third person, should be allowed in payment of the note, is a valid agreement, and the debt when contracted may be shown in payment of the note under the general issue. (*Eaves* v. *Henderson*, 17 Wend., 190.) Formerly there appears to have been a doubt whether an agreement to set off precedent debts operated as a payment, satisfaction or extinguishment. An accord that each of the parties should be quit of actions against the other was said not to be good because it was not any satisfaction. (Bac. Abr., Accord, a.) But there is no difference in principle between an agreement concerning debts, one of which is to be contracted in the future as in *Eaves* v. *Henderson*, and an agreement concerning debts already existing; and it has been decided that an agreement to discontinue and a discontinuance of cross actions for false imprisonment constitute an accord and satisfaction, and bar another action by either. (*Foster* v. *Trull*, 12 John., 456.) Whenever a valid new contract is substituted in the place of the old, as the referee has found was done in this case, an action will not lie upon the old contract, but the remedy of the parties is on the new or substituted agreement, although

the transaction may not amount to a technical accord and sat-isfaction. (*Good* v. *Cheesman*, 2 B. & Ad., 328.)   Where two brothers, A and B, principal and surety in an annuity, had, in an agreement between them and a third brother for the settlement of their affairs, declared that the bond was the debt of B, the surety, it was held that this agreement, whether subsequently acted upon or not, was a binding accord between A and B. (*Cartwright* v. *Cooke*, 3 B. & Ad., 701.)   *Hills* v. *Mesnard* (10 Ad. & E. N. S., 266), is in principle not unlike *Eaves* v. *Hender-son* (*supra*).   The action was by payers against acceptors of a bill.   The defendants became the acceptors for the accommo-dation of one Hundle, and the plaintiffs, the payees, agreed to appropriate certain moneys which they expected to receive in discharge of the bill.   They subsequently received the money and the court held it a payment of the bill *pro tanto*.   Lord DENMAN, Ch. J., says: it was competent for the parties to agree beforehand that the money should be specifically applied to the discharge of the liability on the bill *pro tanto*, "and it seems to be the good sense of the transaction to treat it as so much money paid to the plaintiffs by Hundle on their account and as their agent."

*Gardiner* v. *Callender* (12 Pick., 374), is in point and decides that when E. H. R., one of the executors of A. S., gave to the executors of W. P. a memorandum as follows: "It is agreed that the sum of $3,235, due from E. H. R. to the estate of W. P., shall be applied on a certain note for $6,000 now held by the representatives of A. S.," the memorandum amounted to a payment on the note and was not merely an executory agree-ment.   The fact that a memorandum in writing was made of the agreement, does not vary its legal effect.   It was not required by any law to be in writing.   The court, as in *Hills* v. *Mesnard*, sought the good sense of the transaction, and to give effect to the sensible arrangement of the parties, holding that it could not be necessary in order to connect the one debt with the other by an agreement *in presenti*, that there should be the vain formality of passing the money from one party to the other and returning it again to the party from whom it just

came, or that a formal release or receipt should be executed. This case is not cited by counsel or alluded to, by the court in the subsequent case of *Cary* v. *Bancroft* (14 Pick., 315), but the latter was decided upon a ground which distinguished it from the former case; the court holding in the case last cited that the agreement was executory and not executed, requiring some further act to be done before the one note would operate as payment or extinguishment *pro tanto* of the other. *Dehon* v. *Stetson* (9 Met., 341), followed *Cary* v. *Bancroft*, and was decided upon the same ground. Another point was in the case, to wit: that one of the partners interested in the debt which it was sought to apply in payment as the individual debt of one of his partners, had not been consulted, and had no knowledge of the contemplated arrangement. Whether such consent was material or necessary is doubtful. See *Wallace* v. *Kelsall* (7 M. & W., 264), in which it was held, that to an action by three plaintiffs for a joint demand, a plea of an accord and satisfaction with one of the plaintiffs by a part payment in cash and a set-off of a debt due from that one to the defendant, was good without alleging any authority from the other two plaintiffs to make the settlement.

There was some evidence tending to prove the fact found by the referee. Evidence was given of the negotiation between the parties upon the subject, and what each party said, and that all parties had acquiesced in the arrangement, or without any arrangement had suffered the debts to remain as they were, without attempting to enforce them for several years. Whether the minds of the parties met upon any terms, and if so what were the terms of such *aggregatio mentium* was a question of fact for the referee, whose conclusions are final in this court, not having been reviewed by the court below. He has found upon the evidence that the parties did agree that the mutual debts should be applied in cancelment and discharge of each other, so far as they equaled each other in amount and to the amount of the smallest, and that without any further action by them — that is, that the agreement was executed, not executory. Whatever might be our conclusions upon the evidence, were

we called upon to pass upon and declare the effect of it, we cannot say there was no evidence. Not only was there some evidence, but it was as strong, if full effect is given to the language proved by the witness, as it was in *Gardner* v. *Callender.*

The judgment must be affirmed.

DAVIES, J., also delivered an opinion for affirmance, and all the judges concurred.

*Judgment affirmed.*