## SUPREME COURT.

JOSEPH BRAND, appellant agt. EDMUND BRAND and ALLEN BRAND, respondents.

A *parol agreement* between the plaintiff and one of the defendants, that the amount due to the plaintiff (for his portion of his mother's estate which was in the hands of the defendant) should be *set off and applied* upon a demand which the defendant had against the plaintiff, and that by such set off and application, the claim of the plaintiff against the defendants was to be *cancelled,* is within the *statute of frauds.*

Nothing beyond *mere words* having passed between the parties, and a written memorandum or receipt, which, from the evidence, was agreed (by parol) to have been given by the plaintiff to the defendant, never having been in fact executed, the whole agreement between the parties being in parol, was void by the statute. (*If the agreement mentioned in the case of Davis agt. Spencer,* 24 *N. Y. R.* 386, *was by parol, which is not disclosed by the case, the decision on that point would seem to be against the settled law.*)

*Albany General Term, September,* 1866.

*Before* MILLER, INGALLS, *and* HOGEBOOM, *Justices.*

THIS is an appeal from a judgment entered on the report of a referee. The action was commenced January 22, 1864. After issue joined, the action was referred to Rufus W. Watson, Esq., of Catskill, as sole referee, to hear and decide. The plaintiff and defendants, with seven others, were heirs of Samuel Brand and Mary Brand, late of Durham, Greene county, deceased.

Mary Brand survived her husband, Samuel Brand. And the sum of $766.66 was set apart, and the interest thereon was to be paid to said Mary Brand annually, during her life (which was called her dower right), and said principal sum, at her decease, was to be divided equally among said ten heirs. The defendants entered into an agreement with said Mary Brand, August 16, 1843, to receive this money, to pay her the interest during her life, and then to distribute said principal sum of $766.66 equally among said heirs.

Mary Brand died April 9, 1848, and this action was commenced about sixteen years after, to wit: January 22, 1864, to recover the one-tenth of said sum, to wit: $766.66, with interest from April 9, 1848.

The defendants, among other things, set·up payment and satisfaction, and their proof tended to establish the following facts :

The defendant Edmund Brand, had received this $766.66, and was liable therefor. In the fall of 1847, he and the plaintiff were in partnership in buying and selling stock. The funds for that purpose were furnished principally by Edmund Brand. Each to have one-half the profits, and share one-half the loss. They sustained a loss of some $210, and the plaintiff, as the evidence shows, had used for his individual benefit some $35 of the company funds. Soon after the death of Mrs. Brand, and in May, 1848, the plaintiff and Edmund Brand, in arranging and settling their partnership loss, and the plaintiff's share of this dower right, mutually agreed to apply this claim of the plaintiff upon said demand. of said Edmund, and to cancel the same. This agreement was by parol, and was duly objected to and excepted to on the part of the plaintiff.

The referee found the facts to be as claimed by the defendants, and that the plaintiff's claim had not been paid or satisfied otherwise than by the parol agreement above mentioned. He found as a conclusion of law, that the plaintiff's cause of action was thereby satisfied and discharged, and ordered judgment for the defendants.

Judgment was accordingly so entered with costs, and the plaintiff appealed to this court.

LYMAN TREMAIN and
LAWRENCE FALK, *for plaintiff, appellant.*
OLNEY & KING, *for defendants, respondents.*

*By the court,* HOGEBOOM, J. I feel some embarrassment as to the proper disposition of this case. According to the finding of the referee, the plaintiff was indebted to one of the defendants in a sum equal to or exceeding the amount owing by the defendants to the plaintiff, and it was mutually agreed *by parol,* that the amount due to the plaintiff should be set off and applied upon the demand which the defendant

Edmund Brand, had against the plaintiff, and that by such set off and application, the claim of the plaintiff against the defendants was to be *cancelled*. He further finds that the plaintiff's claim has not been paid or satisfied, otherwise than by the *parol agreement* aforesaid.

No writing was made between the parties, although according to the testimony on the part of the defendants, a *receipt* for the plaintiff's demand was to be given by the plaintiff, which was never done. Indeed, nothing beyond mere words passed between the parties, and the written memorandum or receipt which was contemplated, was never in fact executed.

I have great doubts whether this is sufficient to satisfy the requirements of the statute of frauds. According to the spirit of all the decisions, this was a contract for the transfer or sale by the plaintiff to the defendant, of the chose in action which represented the plaintiff's demand.

There was no note or memorandum in writing, and never has been.

There was no acceptance and receipt of the evidences of the thing in action. The only question is, did the buyer at the time pay some part of the purchase money. (2 *R. S.* 136.)

In *Artcher* agt. *Zeh* (5 *Hill*, 205), Justice COWEN delivering the opinion of the court, says : " Here everything lies in parol—and even if there had been the express agreement which is set up—an agreement for absolute credit, I should doubt whether the statute would be satisfied without something more—at least some *absolute indorsement or written credit*, at the time. One object of the statute was to *prevent perjury.*

" The method taken was to have *something done*, not to rest everything upon mere *oral agreement.*"

In *Shindler* agt. *Houston* (1 *Comst.* 263), Judge GARDINER says : " The object of the statute was not only to guard against the dishonesty of parties, and the perjuries of witnesses, but against the misunderstanding and mistakes of honest men." And at page 264, " the acts of part payment,

Brand agt. Brand.

of delivery and acceptance, mentioned in the statute, are something *over and beyond* the agreement of which they are a part performance, and which they assume as already existing." And at page 260, " this, I apprehend, is the correct rule, and it is obvious that it can only be satisfied by something done *subsequent to the sale,* unequivocally indicating the mutual intentions of the parties. *Mere words* are not sufficient."

BRONSON, J., says at page 266 : " As was justly remarked by the defendant's counsel, there was nothing but *mere words,* and the statute plainly requires something more—it calls for acts."

WRIGHT, J., says at page 273 : " Whilst this meritorious law is in the statute book, it is our business to enforce it in good faith, and according to its plain letter and spirit, without studying to fritter away its vitality in the attempt to uphold contracts, which by its provisions are clearly void."

In *Ely* agt. *Ormsby* (12 *Barb.* 370), the plaintiff sought to recover the value of a *span of horses,* which had been levied upon by the defendant by virtue of an attachment against one Salisbury. The plaintiff made title to the horses through Salisbury, from whom he purchased them by parol.

The plaintiff had a personal mortgage against Salisbury for $500, covering the horses. The case states, " the plaintiff bought the horses at the sum of $300, which amount was *applied on the mortgage,* though not indorsed, the mortgage being on file." A verdict and judgment passed for the plaintiff, which on appeal were reversed, the court holding (according to the head note) that " an agreement to indorse the price of the property upon a personal mortgage held by the purchaser against the vendor, without any indorsement being in fact made, does not constitute payment."

These cases lean strongly against the position of the defendants in this case, and against the conclusion to which the referee arrived. The embarrassment I have felt, arises from the case of *Davis* agt. *Spencer* (24 *N. Y.* 386), to which we have been referred, and which seems by the opinion of

the court to justify the proposition laid down in the head note, to wit: "An agreement between the payee of a note and the maker, made with the assent of the latter's partner, to apply the indebtedness of the payee to such maker and his partner, in payment of the note, operates *in presenti* as *satisfaction* of the note *pro tanto.*"

But the question of the statute of frauds was not considered, and does not appear to have arisen.

There is nothing to show that the agreement was not in writing, and the point involved was, whether an agreement to *apply* imported a *present* application and payment, and it was held that it did.

It *assumes* that the agreement to apply was established by proper evidence, which is the precise question in dispute in the case at bar. In the present case the application or *payment* is not proved by any act of the parties, and certainly by none subsequent to or independent of the contract itself, but is merely claimed legally to flow from the terms of the contract. In my opinion this is not sufficient.

My conclusion on this point is strengthened by the subsequent case of *Brabin* agt. *Hyde* (32 *N. Y.* 519). The action was brought to recover the possession or value of a mare and colt, and the question arose whether the defendant purchased from Blackmer, a former owner (under whom the plaintiff also claimed by a subsequent purchase), was good within the statute of frauds.

The purchase was by parol, for $175, for which he was to give Blackmer credit on his books (Blackmer owing him for a store debt). Such credit or entry appears to have been made upon a *blank leaf* (not in the regular account) of one of the books.

There was no actual delivery of the mare and colt, and Blackmer subsequently sold them to the plaintiff. The court of appeals held the sale to the defendant invalid within the statute, and in their opinion delivered by BROWN, J., expressed themselves as follows, at page 523:

"The payment may be made in money or property, or in the discharge of an existing debt, in whole or in part due

from the vendor to the purchaser, or the extinguishment of, or payment upon a promissory note held by the latter against the former.   A mere agreement to apply the purchase money to either of these objects, would not be enough, because the contract would still rest in *words, and nothing more.*

"The agreement to pay the note or satisfy the debt, must be consumated and carried into effect by an act which shall be obligatory upon the purchaser, and enable the vendee to enforce the contract of sale.   The note should be delivered up and cancelled; or if the purchase money falls short of complete payment, it should be extinguished by an *indorsement* made upon it in writing, which shall operate effectually as an extinguishment *pro tanto.*   And if the purchase money is to be applied to pay open account, in whole or in part, the creditor and purchaser should part with some written evidence of such application which shall bind him, and put it into the power of his debtor and vendee, to enforce the contract.   Without this, or *something like this,* the contract is a mere collection of words, and the statute evaded."

On the whole, I am of opinion that the referee erred, and that the judgment must be reversed and a new trial granted, with costs to abide the event.

MILLER, J., concurred.

INGALLS, J., dissented.