### BOUTON v. HILL.

(Supreme Court, Appellate Division, Third Department. April 14, 1896.)

NEGOTIABLE INSTRUMENTS—LIMITATIONS—INDORSEMENT—EFFECT.

    In an action on a note, it appeared that it was made in 1883, with the understanding that, if the amount named in it exceeded the true indebtedness of the maker, it should be made right; that in 1890 it was found that the amount was too large, and the difference was, by direction of de-

fendant, indorsed as a payment as of the date of the note. *Held*, that such indorsement was, in effect, a payment at the time it was made, and removed the note from the bar of limitations.

Appeal from circuit court.

Action by James H. Bouton again Sarah Ann Hill. From a judgment in favor of defendant, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Soop & Andrus (I. H. Maynard, of counsel), for appellant.
James R. Baumes, for respondent.

HERRICK, J. This is an appeal by the plaintiff from a judgment rendered against him and in favor of the defendant, and from an order denying a motion for a new trial, made upon the minutes of the court. The action is upon a note for $800, dated March 15, 1883, signed by the defendant, and payable to the order of the plaintiff. The defense is the statute of limitations, and usury. The evidence given upon the trial was insufficient to establish usury, and the case turned upon the defense of the statute of limitations. It is conceded that the action was commenced December 24, 1892. At the close of the evidence the plaintiff asked the court to direct a verdict for the plaintiff upon the ground that an indorsement thereon of $117.50, made on or about the 15th of December, 1890, but entered on the note as having been made March 15, 1883, was such a payment, indorsement, and reissuing of the note as to take it out of the statute of limitations; and that such indorsement in 1890 was both a reissuing of the note, and a payment upon it. The court denied the motion. There was evidence of another indorsement upon the note, of $20, which plaintiff alleged had been paid upon the note by the defendant, and which, if made when it purported to be, would take the note out of the statute. The defendant denied having made such payment, or authorized it to be made on her behalf. That question was submitted to the jury, who found in favor of the defendant; and there was evidence to sustain their finding that the defendant did not make such payment of $20, or authorize it to be made, and their finding in that respect will not be disturbed.

The order denying the motion for a new trial, made upon the minutes, brings up for review the refusal of the court to direct a verdict for the plaintiff upon the ground that the indorsement of $117.50 made on said note on the 15th of December, 1890, was, in effect, a payment thereon at that time, which removed the note from the bar of the statute. We will therefore consider what the effect of that transaction was.

The note in question appears to have been in final settlement of transactions between the plaintiff and the defendant's husband, in which the plaintiff held a note of the defendant's husband, which had originally been for the sum of $2,000, and upon which the plaintiff claimed there was still $900 due. The defendant's version of the transaction when the note in question here was given is this:

"Mr. Bouton had Mr. Hill's note with him at the time, and we figured from it. He figured from it, and I did; and we didn't agree in our figures at all. I could not make it nearly as much as he did,—the amount that was due; but finally Mr. Hill came in from the barn, and I told him how much Mr. Bouton claimed on it, and he said there was no such amount due, and not to sign it. * * * After he went out, Mr. Bouton said he would make it $800, and I told him I thought that wasn't right, but he was sure it was; and he said, 'Sign that,' and him and his wife were coming out, and, if it wasn't right, he would then make it right, and I might get others to figure it. * * * I signed the $800 note on those terms. * * * I always said I shouldn't pay anything on the note until it was made right."

Mr. Andrus, a witness called for the plaintiff, says that he was at the office of the defendant's attorney when the question arose as to the true amount that was due between the parties; that they handed him the paper, to figure up the amount and ascertain what the true amount of the note ought to have been when it was given; that all the parties were then present,—the plaintiff, defendant, and her husband; and that he found that a mistake had been made of $117.50.

"There was quite a little conversation as to what should be done with the $117.50, and Mrs. Hill claimed that she would be deprived of the advantage of the interest on it, if indorsed on that date, and then I suggested that we indorse the amount as of the date of the note, and that it would even itself, and I did so. They consented to it, and Mrs. Hill did. She was present, and I had the note there, and indorsed it in the presence of all the parties. The indorsement was actually made about the 15th of December, 1890."

The indorsement spoken of reads as follows: "March 15th, 1883, p'd hereon $117.50." The defendant says that the indorsement "was done substantially as Mr. Andrus states, I think." So that the facts in relation to this transaction are undisputed, and the only question is as to their effect. Section 395 of the Code of Civil Procedure provides that:

"An acknowledgment or promise, contained in a writing signed by the party to be charged thereby, is the only competent evidence of a new or continuing contract whereby to take a case out of the operation of this title. But this section does not alter the effect of a payment of the principal or interest."

Before the enactment of this provision of the Code, and the similar statutes that preceded it, oral acknowledgments of the continued existence of a debt were sufficient to take a case out of the operation of the statute of limitations. The natural effect of that was to give rise to misconstruction of the words used by debtors in speaking of claims against them, and to multiply perjuries. And the reason for the enactment of the statute was to prevent perjuries, and to prevent the bar of the statute being raised except when the debtor had given unequivocal evidence of the continued existence of the debt, and of his intention to pay it. A writing signed by him would be such evidence. The reason that payment or part payment was excepted from the effect of the statute was that payment or part payment was considered such an unequivocal act of acknowledgment of the debt, and promise to pay the remainder, as not to be subject to misconstruction, or prolific of perjury, the act of payment speaking for itself. The last clause of section 395 leaves the courts to de-

termine what constitutes a part payment, and its effect, and it leaves the rules of evidence as to the effect of such payment or part payment as they were at common law. Bank v. Ballou, 49 N. Y. 155; Mills v. Davis, 113 N. Y. 243, 21 N. E. 68; Murdock v. Waterman, 145 N. Y. 55–62, 39 N. E. 839. Part payment of a demand has, from time immemorial, been held to remove the bar of the statute, and set it running again from the time of such payment.

"The effect of a part payment, in taking a case out of the operation of the statute of limitations, or, rather, in enlarging the time during which an action may be brought, is not derived from any statutory provision, but results from the decisions of the courts, and depends wholly upon the reason of those decisions. The reason is that a part payment made on account of a claim is an acknowledgment by the debtor of his liability for the whole demand, and from this acknowledgment a new promise on his part to pay the residue is implied. The undertaking of the debtor, as to the unpaid part of the debt, is thus, by a legal presumption, renewed, and made to date from the time of the part payment." Harper v. Fairley, 53 N. Y. 442–444.

See, also, Crow v. Gleason, 141 N. Y. 489–493, 36 N. E. 497; Adams v. Olin, 140 N. Y. 150–160, 35 N. E. 448.

The efficacy of a payment to avert the effect of the statute as a bar resides in the conscious and voluntary act of the debtor, explainable only as a recognition and confession of the existing liability. Blair v. Lynch, 105 N. Y. 636–638, 11 N. E. 947. In the case of Murdock v. Waterman, 145 N. Y. 55–62, 39 N. E. 829, the court said:

"The effect of a part payment, in any case, and against whom it shall operate, is to be determined by the principles established by the decisions of the courts applicable to the subject. The question has most frequently arisen in actions of assumpsit brought upon promises for the payment of money, against the party to the contract, in which the statute of limitations has been interposed as a defense; and the general principle has been asserted, with great uniformity, that a part payment, available to take the case out of the statute, must have been made by the debtor, or his authorized agent, or, if made originally without authority, it must have been subsequently adopted by him as his act. This view is founded upon the reason upon which a part payment is held to renew or continue the debt. Part payment of a debt by a debtor constitutes an admission, by the person obligated to pay, of his liability for the whole debt upon which the partial payment is made, and justifies an inference of a new promise, made at that time, to pay the portion remaining unpaid. The courts, acting upon this admission, and inferring therefrom a new promise, treat the contract as renewed from the time of the part payment, and the payment as giving a fresh start to the running of the statute."

It will be seen, from the cases cited, that the reason that payment is held to remove the bar of the statute is that it is an act acknowledging liability for the whole demand, and the law implies a promise to pay what is left of it, the promise so implied dating from the time of the part payment. What, then, is a payment that will take the case out of the operation of the statute? In its restricted sense, "payment" has been defined to be the discharge in money of a sum due. In more liberal and general terms, it may be defined as anything which the creditor accepts, or, in law, should accept, in satisfaction and discharge of the debt due him. The performance of services, if accepted, or agreed to be accepted, in payment, is sufficient. A transfer of credit by consent of parties is

equivalent to payment. Bank v. Burkhardt, 100 U. S. 686–689. An agreement that a debt due, or about to become due, shall be deemed a payment on a debt due from the debtor, operates as a payment and satisfaction. Davis v. Spencer, 24 N. Y. 386; Holcomb v. Campbell, 118 N. Y. 46–54, 22 N. E. 1107. But in determining what is a payment, within the meaning of the statute and the decisions of the courts, sufficient to take a demand out of the operation of the statute of limitations, the courts have been still more liberal. The delivery by a debtor to a creditor of the note of a third person, as collateral to the payment of his debt, is equally significant, as an acknowledgment by the debtor of his liability for the whole demand, as would be an absolute payment of a like amount, and is within the reason of the rule which makes such an acknowledgment of a liability, from which a new promise to pay the residue is implied, sufficient to take the case out of the statute. The act is of the same character, and equally unequivocal, as a payment in fact. The effect of the transaction is the same whether the collateral security or conditional payment is made available, and result in the payment of any part of the debt, or not. The statute of limitations is answered from the time of the delivery of the collateral security. Smith v. Ryan, 66 N. Y. 352. So the delivery to the creditor of a policy of life insurance, or of the renewal certificate of such a policy, as collateral security for the payment of a debt, is sufficient to constitute a renewal of the debt, and the statute will begin to run from the time of such delivery. The theory upon which the delivery of the policy saves the operation of the statute is that the debtor, by such act, acknowledges the debt, and evinces a willingness to pay. Miller v. Magee (Sup.) 2 N. Y. Supp. 156. Now, in the case before us we have a note given with the understanding that, if the amount named in it is more than the true indebtedness of the maker, it shall be made right. It appears that in truth the holder of the note is entitled to receive $117.50 less than the face of the note. If, during the lifetime of the note, the plaintiff had brought suit against the defendant, upon it, for the face thereof, the defendant could have pleaded a partial failure of consideration, and had the amount of $117.50 deducted from it. As between the parties to a note, a defense of a total or partial failure of consideration is good. Sawyer v. Chambers, 44 Barb. 42. A partial failure is a defense pro tanto. McKnight v. Devlin, 52 N. Y. 399. If the note had passed into the hands of a third person, who had brought his action upon it against the defendant, who had thereby been compelled to pay the full amount specified in it, I do not think there is any question but that she could have recovered from the plaintiff the difference between the face of the note and the actual indebtedness to the plaintiff, upon showing the agreement between them at the inception of the note. The difference, if any, that should be found to exist between the face of the note and the actual amount due the plaintiff, being something that the defendant could assert as a defense, pro tanto, to a suit upon the note brought against her by the plaintiff, or which she could recover from him in the event of such note's going into the

hands of a third person, and she being compelled to pay the whole amount thereof, such difference constituted a claim or credit in favor of the defendant against the plaintiff,—something which could be applied in partial reduction, extinguishment, or payment of the note. And it was so applied by consent of parties. The indorsement was not made by the plaintiff, but by a third party, with the consent, or, it may rather be said, by the instruction, of the defendant. And it was done under such circumstances as to show an acknowledgment of the balance of the note, and an intention to pay it. Her claim that she would be deprived of the benefit of the interest upon it, if it was indorsed as of that date, emphasizes her acknowledgment of the balance of the note, and of her intention to pay. The whole transaction brings it clearly within the reason of the decisions I have cited, for allowing payment to prevent the operation of the statute; and within the meaning of the statute, and the principle of the cases hereinbefore referred to, I think it must be held to be a payment upon the note, made when the indorsement was in fact placed on the note. The evidence by which the facts I have recited were established was not objected to. The facts were undisputed. The statute of limitations had, by reason of the circumstances I have detailed, no application to the case, and there was nothing for the jury to pass upon, and the court should have directed a verdict. Miller v. Talcott, 54 N. Y. 114–119. If the court had held the transaction of December 15, 1890, a payment, as herein indicated, the question as to the indorsement of $50, January 30, 1886, and of $20, December 30, 1886, would have been of no consequence; the bar of the statute being removed by the transaction of December 15, 1890.

The judgment should be reversed, and a new trial granted; costs to abide the event.

PARKER, P. J., and MERWIN and LANDON, JJ., concur. PUT-NAM, J., concurs in result.