GEORGE T. SCOTT, Plaintiff, *v.* RHODA E. ARMSTRONG et al., Defendants.

Supreme Court, New York County, September 10, 1948.

*Haughwout & Matthews* for plaintiff.

*Barr, Robbins & Palmer* for Bank of New York and another, as trustees under the will of Vera S. Cushman, deceased, defendants.

*Cox & Treanor* for James S. Cushman, as trustee under the will of Vera S. Cushman, deceased, defendant.

*John Hall Forbes* for Rhoda E. Armstrong, defendant.

CHARLES C. LOCKWOOD, Official Referee. In the Spring of 1937, Vera Scott Cushman purchased 28 East 95th Street, Manhattan, from one Rhoda E. Armstrong. On June 23, 1937, she paid the seller for the equity above a first mortgage of $20,000 (reduced from $26,000) and took title in her own name subject to the mortgage.

The day she acquired the property, she bought the mortgage for par and accrued interest from the then holder, Jenny P. Forbes, and directed that it be assigned to her brother, George T. Scott, to whom she or her attorneys gave the bond and mortgage and later the recorded assignment.

Promptly after title closing, the fire insurance policy was indorsed to show the new ownership in Vera Scott Cushman with loss, if any, payable to the mortgagee, George T. Scott. Before this policy expired in 1940, Mrs. Cushman's insurance broker called her attention to the fact that the fire insurance policy on 28 East 95th Street was indorsed " loss, if any, payable to George T. Scott, first mortgagee." The broker says the renewal policy expiring May 23, 1943, was indorsed in the same way " pursuant to her specific knowledge and authority " and sent to Mr. Scott in accordance with Mrs. Cushman's " express instructions." The duplicate was held by the broker for her in his office. The premium, $87, along with premiums on policies on other properties, was paid by Mrs. Cushman's personal check, drawn and signed by her on June 27, 1940.

In May, 1943, the same procedure was followed and Mrs. Cushman again paid the premiums with her personal check.

Vera Scott Cushman died February 1, 1946, never having paid her brother any interest or principal on said mortgage.

Under date of May 10, 1946, the insurance broker who had acted for Mrs. Cushman during her life and was then acting for her executors and trustees, renewed and paid for the fire insurance policy and forwarded it to Mr. Scott, with a letter stating it was sent '' in connection with the mortgage you have on the property.''

Mrs. Cushman left a will executed February 10, 1943, disposing of an estate of about two million dollars. After a few small specific bequests to friends, the residuary goes:

Four tenths to the trustees to pay the income for life to her surviving husband. On his death, the principal of this trust is to be distributed outright—one fourth to a surviving nephew and three fourths to various charitable institutions — $50,000 of it to the Board of Foreign Missions of the Presbyterian Church '' in recognition and appreciation of the work of my brother, George T. Scott, D. D. who for many years served as one of the secretaries.''

One tenth to the trustees to pay the income for life to her brother, George T. Scott. On his death this principal is left to the Tressler Orphans Home.

The remaining five tenths goes outright to three nephews and two nieces.

The will names James S. Cushman, the surviving husband, and George T. Scott, the surviving brother, as executors and trustees. They qualified, and evidently on their application, the Bank of New York was also appointed as executor and trustee.

No doubt the decedent was very fond and proud of her only brother and nearest blood relative. Nevertheless, her will gives him only a life income on one tenth of the net estate. She undoubtedly assumed he was getting the $20,000 mortgage and died without suspecting that its validity might be questioned because of her failure to pay interest or principal for six years.

The individual defendants — members of the family — evidently feel the same way, as they do not contest the action George T. Scott started in May, 1947, to foreclose the mortgage.

However, the trustees answer and contend that the failure to pay interest or principal within six years prior to the commencement of the action, bars recovery (Civ. Prac. Act, § 47-a) and ask that the complaint be dismissed.

The matter was referred to hear and determine.

Plaintiff asserts that the statute was tolled first by acts amounting to conditional payments of principal, and, second,

by acknowledgments in writing signed by the party to be charged, as provided in the statute. (Civ. Prac. Act, § 59.)

The general rule is that the giving of security constitutes a sufficient acknowledgment of a debt, to take it out of the operation of the statute, and is as significant as a part payment of the debt. The mortgage was a debt against the property in which decedent owned the equity. The fire insurance policies were part of the security held by the plaintiff as mortgagee.

The premium payments by decedent with her personal checks in her own handwriting, and the renewal and delivery of the fire insurance policies to the plaintiff in May, 1940, and May, 1943, directed by the decedent, and the acceptance of same by plaintiff, was sufficient to constitute a renewal of the debt.

The statute began to run from the time of the delivery of the last policy of insurance, renewed and delivered in her lifetime. The theory upon which the payment for and the delivery of the insurance saves the operation of the Statute of Limitations is that the debtor by such acts, acknowledged the debt and its validity and evinces a willingness to pay and brings the acts of the decedent within the reason of the rule which makes such payment and delivery of the policies an acknowledgment of continuing the liability herein, from which a new promise to pay is implied.

Under the circumstances, I find plaintiff is entitled to judgment for the following relief:

(1) A judgment of foreclosure and sale of the entire property.

(2) An adjudication that the action is not barred as to any of the defendants.

(3) That from the proceeds of the sale, after the payment of costs and expenses, the plaintiff be paid the full amount of his mortgage with interest from June 23, 1937, to the date of the judgment, at 5%, so far as there are funds sufficient to pay the same.

Settle order on notice.