Carlos Land Company, Appellant, *v.* Ivan C. Root, Respondent, et al., Defendants.

Fourth Department, July 8, 1953.

*Edward D. Siemer* for appellant.

*James O. Moore, Jr.*, and *Nathan Rovner* for respondent.

KIMBALL, J. On or about July 10, 1951, the plaintiff commenced an action against the defendants to foreclose a mortgage executed by the defendant, Ivan C. Root, as mortgagor, to the plaintiff. The bond and mortgage were dated December 1, 1922. Defendant Root was obligated to pay the plaintiff the sum of $5,500 principal with interest at 6%. The whole principal, by the terms of the bond and mortgage, was due and payable on January 1, 1926. No payments were ever made upon the principal indebtedness. The last payment on account of interest was on December 16, 1937. The defendant Root interposed as a defense, the Statute of Limitations (Civ. Prac. Act, § 47-a) and his answer demanded the cancellation of the mortgage and its discharge of record.

Section 47-a of the Civil Practice Act became effective on September 1, 1938. Under this section, the last day for commencing an action to foreclose was September 1, 1944. The plaintiff replied to the answer and relied upon section 59 of the Civil Practice Act to take the action out of the Statute of Limitations. The " Fourth " paragraph of the reply is as follows: " That on or about the 12th day of August, 1950 the defendant, Ivan C. Root acknowledged the debt due on the bond and mortgage as alleged in the complaint and answer herein, by the giving to the plaintiff of security in the form of a fire insurance policy No. 478469, renewing 467006 with the Transcontinental Insurance Company of New York, insuring the said mortgaged premises against loss by fire in the sum of $5,000.00."

The fire insurance policy insured defendant Root and his wife for loss by fire or lightning to the frame dwelling on the premises. The policy contained a New York standard mortgagee clause. Loss or damage was payable to Carlos Land Company,

mortgagee, " as interest may appear under all present and future mortgages ". It was stipulated that said fire insurance policy had been delivered to one Plato who was an officer of and attorney for the plaintiff and that the policy was thereafter " in the possession of that office." It was agreed at the time of the submission of the case that there was only a " question of law as to whether or not the giving of this insurance policy tolled the statute of limitations." The County Court held that there was no acknowledgment of or promise to pay the debt by reason of the policy and that such policy did not constitute a part payment. The court further found and held that the plaintiff had no interest in the property within the meaning of the mortgagee clause. The judgment dismissed the complaint and cancelled the mortgage.

We agree with the decision of the County Court. There was no acknowledgment or promise in writing signed by Root, as required by section 59 of the Civil Practice Act. The sole remaining question is whether the issuance of the fire insurance policy constitutes a payment of principal or interest, the effect of which is not altered by section 59. Payment or part payment is considered as an acknowledgment of the debt and a promise to pay the remainder. (*Bouton* v. *Hill,* 4 App. Div. 251; *Smith* v. *Ryan,* 66 N. Y. 352.) It has been held and is the law of this State that, under certain circumstances, the giving of security or collateral for the payment of the debt is to be considered as a part payment so as to toll the Statute of Limitations. The rule is summarized in Carmody on New York Practice (Vol. 2, § 494, p. 786) as follows: " It is not necessary that the payment be a money payment. The delivery of a bill or note as collateral security or as a provisional or conditional payment * * * are equally significant as an acknowledgment of the whole debt." In *Smith* v. *Ryan* (66 N. Y. 352, *supra*) the court said (p. 354–355): " The delivery of a bill or note as collateral security or as a provisional or conditional payment in part of a debt is equally significant as an acknowledgment by the debtor of his liability for the whole demand, as would be an absolute payment of a like amount, and is within the reason of the rule which makes such payment an acknowledgment of a liability from which a new promise to pay the residue is implied. The act is of the same character and equally unequivocal as a payment in fact."

The case of *Smith* v. *Ryan* (*supra*) was one of the authorities cited for the decision in *Miller* v. *Magee* (49 Hun 610, opinion in 2 N. Y. S. 156). In the latter case, there was a written assign-

ment of a life insurance policy on the life of the debtor. The court found that the policy was assigned as further security to the notes and as such tolled the statute. The opinion, however, pointed out that (p. 158): "The policy of insurance is not a contract of indemnity, but an absolute obligation on the part of the insurers to pay $2,500 on the happening of an event certain, viz., the death of the insured, providing, however, the premiums are annually paid." In the case now before us, there was no assignment of the policy but only an agreement that in event of loss, the same was payable to plaintiff as its interest might appear. The appellant relies heavily upon *Scott* v. *Armstrong* (193 Misc. 220, 221, 223). The learned Official Referee there held that the fire insurance policies with " ' loss, if any, payable to George T. Scott, first mortgagee ' ", were part of the security held by the mortgagee. He wrote: " The premium payments by decedent with her personal checks in her own handwriting, and the renewal and delivery of the fire insurance policies to the plaintiff in May, 1940, and May, 1943, directed by the decedent, and the acceptance of same by plaintiff, was sufficient to constitute a renewal of the debt." It appears, in the *Scott* case, that the mortgagee was a brother of the decedent whose will gave him only a life income of one tenth of the net estate. The Referee said the decedent undoubtedly assumed that her brother was to have the $20,000 mortgage. The trustees under the will, as they were bound to do, set up the Statute of Limitations in the foreclosure action. The other defendants who were members of the family made no contest. Apparently the action was of a friendly nature for the purpose of giving the brother the $20,000 and, at the same time, protecting the trustees in the discharge of their duties. No authority was cited for the holding made. Insofar as that case holds that the issuance of a fire insurance policy with loss payable to a mortgagee is collateral security for the obligation of the mortgagor to pay the debt, we do not agree with it.

Unlike a life insurance policy, a fire insurance policy is solely one of indemnity. There is no obligation to pay a certain sum upon the happening of an inevitable event. If a loss occurs, the insurer indemnifies the insured for the loss sustained. (1 Couch on Cyclopedia of Insurance Law, § 27; 4 Appelman on Insurance Law and Practice, § 2107; *Cromwell* v. *Brooklyn Fire Ins. Co.*, 44 N. Y. 42.) We do not think that a fire insurance policy issued to the mortgagor with a standard mortgagee clause may be deemed to be collateral security for the debt, evidenced by the bond and mortgage, so as to constitute part payment of the debt. The security for the obligation is the lien

of the mortgage upon the land and its improvements. Should there be a loss by fire, the proceeds paid by the insurer take the place of the building destroyed to the extent of the loss but the insurance adds nothing to the total security already given by the lien of the mortgage. The issuance of the fire policy in this case was not a part payment of the debt " accompanied by circumstances' amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder." (*Crow* v. *Gleason,* 141 N. Y. 489, 493, cited in *Trans America Development Corp.* v. *Leon,* 279 App. Div. 189.) We said in *Matter of Fitch* (270 App. Div. 227, 238): " Moreover it is undoubtedly the rule that where reliance is placed upon a part payment to take a debt, outlawed at the time the payment was made, out of the Statute of Limitations, more evidence is required to start running a new Statute of Limitations than would be required as to a debt not barred." In the instant case, the statute having run, it would seem that, in any event, the mortgagee had no interest in the policy or its proceeds in event of a loss.

The judgment appealed from should be affirmed.

All concur. Present — TAYLOR, P. J., McCURN, KIMBALL, PIPER and WHEELER, JJ.

Judgment affirmed, with costs.