Gilbert Murdock et al., Respondents, *v.* Clarissa Waterman et al., Impleaded, etc., Appellants.

A payment on a mortgage, made after the death of the mortgagor, by his heirs who have inherited part of the mortgaged premises, to protect their title, does not arrest the running of the Statute of Limitations as against the lien of the mortgage upon another part of said premises which were conveyed by the mortgagor in his lifetime to a third person for full value, who assumed no duty as regards the mortgage, and was under no obligation to pay the mortgage debt.

A payment to arrest the running of the statute must be made by a party to or who is bound to pay the obligation, or by one who is in fact or in law his authorized agent.

*It seems*, that a partial payment by a mortgagor upon the debt secured, made after a conveyance of the mortgaged premises, but before the debt is barred by the statute, continues the lien of the mortgage.

*Murdock* v. *Robinson* (71 Hun, 320), reversed.

(Argued January 17, 1895; decided February 26, 1895.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made September 12, 1893, which affirmed a judgment in favor

of plaintiffs entered upon a decision of the court on trial at Special Term, after trial of certain specific facts by a jury.

. The nature of the action and the facts, so far as material, are stated in the opinion.

*George Brooks* and *James W. Tucker* for appellants Robinson and Lamb.   There is no evidence in the case that Griswold was the agent of either of the defendants, or that he had any authority to represent either of them, except as special guardian of Mary Lamb, appointed by the court to convey her interest in the north house and lot to Mr. Palmer.   His position as guardian certainly gave him no right or authority to make any admissions that would prejudice the rights of the infant, or be binding upon her.   (2 Wharton's Ev. § 1208; 1 Phillips on Ev. [5th ed.] 485.)   Plaintiffs cannot maintain this action jointly.   (Addison on Cont. [8th ed.] 938; 1 Pars. on Cont. 31, 32; *Goddard* v. *Benson,* 15 Abb. Pr. 191.)   The Statute of Limitations is a bar to the prosecution of this action, and the payment of one dollar, as made August 8, 1885, was not such a payment as the law required to remove the bar of the statute.   (*Morgan* v. *Rowland,* L. R. [7 Q. B.] 493; *Harper* v. *Farley,* 53 N. Y. 442; *Blair* v. *Lynch,* 105 id. 636; *McLaren* v. *McMartin,* 36 id. 92; *Smith* v. *Ryan,* 66 id. 352; *Pickett* v. *Leonard,* 34 id. 175.)   The evidence shows, and the jury so found, that the one dollar paid August 8, 1885, was paid by Lucinda Lamb, and was paid on behalf of all the defendants.   This finding was not warranted by the evidence.   (*Littlefield* v. *Littlefield,* 91 N. Y. 203; *McMullen* v. *Rafferty,* 89 id. 456; *Gould* v. *C. C. Bank,* 86 id. 75.)   The admission to avoid the statute must amount to an unqualified acknowledgment of the debt, disconnected with any circumstances indicating an intention not to become liable upon it.   (*Deyos* v. *Jones,* 19 Wend. 493; *Arnold* v. *Downing,* 11 Barb. 554; *Crow* v. *Gleason,* 141 N. Y. 489; *Adams* v. *Olin,* 140 id. 150; *Lomer* v. *Meeker,* 25 id. 363.)   The payment of one dollar did not take the case out of the Statute of Limitations as to the defendant Mary Lamb.   (11 Johns. 145.)

The learned trial judge erred in finding that the mortgage in suit had not been paid. (*Giles* v. *Baremore*, 5 Johns. Ch. 545; *Pangburn* v. *Miles*, 10 Abb. [N. C.] 42; *Townshend* v. *Townshend*, 1 Abb. [N. C.] 81; *Dunham* v. *Minard*, 4 Paige, 443; *Mooers* v. *White*, 6 Johns. Ch. 360; *Belmont* v. *O'Brien*, 12 N. Y. 394.) It was claimed by the respondents, on the argument of the cause at General Term, that as no formal motion for a new trial had been made before the trial judge, the verdict of the jury was conclusive upon the appeal as to the facts found by such verdict. It is submitted that the case at bar does not come within the rule. (*Bowen* v. *Becht*, 35 Hun, 434; *Littlefield* v. *Littlefield*, 91 N. Y. 205; *Shoemaker* v. *Benedict*, 1 Kern. 178; *F. N. Bank* v. *Ballou*, 49 N. Y. 155; *Harper* v. *Fairley*, 53 id. 442; *Winchell* v. *Hicks*, 18 id. 558; *In re Kendrick*, 107 id. 109.) It was held by the trial court that, as no personal representatives of the mortgagors were ever appointed, the Statute of Limitations has been suspended since their death under the provisions of section 403 of the Code of Civil Procedure, and hence the defendants cannot avail themselves of the bar of the statute as a defense to this action. It is submitted that this is not a correct interpretation of the section of the Code cited. (*Church* v. *Olendorf*, 49 Hun, 439; *In re Quinlan*, 2 Dem. 29; *Chapman* v. *Fonda*, 24 Hun, 130; *Sanford* v. *Sanford*, 62 N. Y. 553.)

*E. M. Harris* for appellant Waterman. The court erred in refusing to dismiss the complaint as to defendant Waterman, and in refusing the several requests of the defendant. The bond and mortgage are presumed to have been paid by reason of lapse of time. (Code Civ. Pro. § 381; *Burnham* v. *Brown*, 23 Maine, 400; *Frank* v. *Morrison*, 55 Md. 399; *Heywood* v. *Perrin*, 10 Pick. 228; *Parker* v. *Banks*, 79 N. C. 480; *Bush* v. *Stowell*, 71 Penn. St. 208.) But independent of the indorsements mentioned, or the one dollar payment, and the verdict of the jury, it is submitted that the action as to the defendant Waterman cannot be maintained.

The mortgage as to her property is barred by the Statute of Limitations. (*Hansett* v. *Patterson*, 124 N. Y. 349; *Harper* v. *Fairley*, 53 id. 442; *Kelly* v. *Weber*, 27 Hun, 8; *Smith* v. *Ryan*, 66 N. Y. 352, 356, 357; *Littlefield* v. *Littlefield*, 91 id. 203; *Miller* v. *Magee*, 17 N. Y. S. R. 547; *Blair* v. *Lynch*, 105 N. Y. 636; *Lord* v. *Morris*, 18 Cal. 482.)

*Lynn J. Arnold* for respondents. Defendants' objection on the trial that there was a misjoinder of parties plaintiff was not well taken, and in any event came too late. (*In re Albrecht*, 136 N. Y. 91; 1 Pom. Eq. Juris. § 114.) As defendants did not move for a new trial of the issues submitted to the jury, they are precluded from questioning the verdict or reviewing the exceptions taken upon the jury trial. (*Chapin* v. *Thompson*, 23 Hun, 12, 15; 80 N. Y. 275, 277; 89 id. 271, 274.) The exceptions filed by defendants to findings of fact, and exceptions filed by defendant Waterman, to computation of interest by referee, were not well taken. (Code Civ. Pro. §§ 992, 993; *Cram* v. *Bradford*, 4 Abb. Pr. 193; *Hill* v. *Reynolds*, 30 Barb. 488; *Porter* v. *Smith*, 35 Hun, 118; *O'Brien* v. *Young*, 95 N. Y. 428.) The one dollar payment by the Lamb heirs kept the mortgage debt alive and a lien on that portion of the mortgaged premises owned by them. (*Dings* v. *Guthrie*, 45 Hun, 436, 438; *Pears* v. *Laing*, L. R. [12 Eq.] 51, 54.) The one dollar payment by the Lamb heirs kept the mortgage debt alive, so that it continued a lien on the portion of the mortgaged premises owned by Clarissa Waterman. (*N. Y. L. Ins. Co.* v. *Covert*, 6 Abb. Pr. [N. S.] 154; *Hansett* v. *Patterson*, 124 N. Y. 449; *Pears* v. *Laing*, L. R. [12 Eq.] 41; *Hughs* v. *Edwards*, 9 Wheat. 489–492; *Littlefield* v. *Littlefield*, 91 N. Y. 203–209; *Tighe* v. *Morrison*, 116 id. 263; *Rodman* v. *Morley*, 1 DeG. & J. 1; 2 Jones on Mort. [4th ed.] § 1202; Code Civ. Pro. §§ 380, 381, 403.)

ANDREWS, Ch. J. The only question arises upon the defense of the Statute of Limitations. The action is for the

foreclosure of a mortgage executed by Alanson Lamb and Daniel Lamb to Harvey Murdock and Erastus Robinson, dated Sept. 21, 1861, to secure the payment of $826, with interest, in installments, the last of which became due Sept. 21, 1865. The mortgage contains an express covenant of payment in the same terms as in the bond of the mortgagors executed concurrently therewith, and purports to bind them, "their heirs, executors and administrators." The mortgaged premises consisted of a village lot, on which were two dwelling houses owned by the mortgagors as tenants in common. Alanson Lamb died intestate in 1870, and his undivided half of the mortgaged premises descended to his daughter, the defendant Mary Lamb. In 1871, Daniel Lamb and Mary Lamb by her special guardian conveyed the south half of the lot and the dwelling house thereon to one Palmer, under whom the defendant Clarissa Waterman claims, for the sum of $1,650, the full value of the granted premises. The conveyance was by separate deeds. The deed executed by Daniel Lamb was with warranty, and the deed by the special guardian of Mary Lamb contained no covenants of title. Neither deed referred to the mortgage. The surviving mortgagor, Daniel Lamb, died intestate in 1872, and his undivided one-half interest in the north half of the mortgaged premises descended to his daughters, Harriet Robinson and Lucinda Lamb, and his granddaughter, Mary Lamb. Lucinda Lamb died intestate November 8, 1887, and her interest derived from Daniel Lamb descended to her sister, Harriet Robinson, and her niece, Mary Lamb. When this action was commenced the title to the mortgaged premises was held as follows : The south one-half was owned by Clarissa Waterman under the deeds executed in 1871 ; the north half had descended to and was owned by the defendants Harriet Robinson and Lucinda Lamb, one-fourth part by the former and three-fourths parts by the latter.

No part of the principal sum secured by the mortgage has been paid. The mortgagors in their lifetime paid the interest up to September 21, 1865 (the day when the whole principal

sum became due), and the payments were indorsed on the mortgage. No subsequent payment was made at any time until August 8, 1885, when, as is found by the trial judge, the sum of one dollar was paid and applied on the bond and mortgage "by Lucinda Lamb, on behalf of Lucinda Lamb, Harriet Robinson and Mary Lamb, in their presence and with their knowledge and approval, and in recognition of the mortgage lien." This is the payment relied upon to take the case out of the statute. It was made nearly twenty years after the mortgage became due, and the same period after the last preceding payment had been made. It was held by the trial court that this payment kept the mortgage in life not only as against the part of the mortgaged premises then owned by the parties by whom the payment was made, but also as against the part of the premises owned by Clarissa Waterman, who was not a party to that transaction and who neither authorized, consented to or ratified such payment. The payment was made on an occasion when the mortgagees called at the house on the mortgaged premises, occupied by Harriet Robinson, Lucinda and Mary Lamb, and informed them that the mortgage was about to outlaw, and required that a payment be made in order to prevent a foreclosure.

It appears from the evidence that Palmer went into possession of the south house and premises under the deed of 1871, and that he and his grantees have remained in visible occupation since that time, and there is no ground for doubt that the mortgagees on the 8th day of August, 1886, when the payment of one dollar was made, fully understood the facts respecting that conveyance and the possession thereunder, and the history of the devolution of the title of the other half of the mortgaged premises by reason of the death of Alanson Lamb. No administrators of the estate of either Daniel or Alanson Lamb have been appointed.

We entertain no doubt that the finding that the payment of one dollar made August 8, 1885, was made in behalf of and with the knowledge and approval of all the three owners of this north half of the mortgaged premises, and in recognition

of this mortgage lien, is supported by evidence. Nor is there any doubt that the payment operated to continue the lien of the mortgage for twenty years thereafter (unless sooner paid) as against the part of the premises then owned by the descendants of Alanson and Daniel Lamb. It was an unequivocal acknowledgment by them of the mortgage. The serious question arises as to the effect of this payment upon the lien of the mortgage upon the part of the premises owned by Mrs. Waterman, who confessedly was not a party to the payment. The question is whether a payment on a mortgage made by the heirs of the mortgagor, who have inherited part of the mortgaged premises, made after the death of the ancestor, to protect their title, arrests the running of the statute as against the lien of the mortgage, on a part of lands embraced therein, conveyed by the mortgagor in his lifetime to a third person for full value, who assumed no duty and who was under no obligation to pay the mortgage debt.

The statute (Code Civ. Pro. §§ 380, 381) fixes the period of twenty years after the cause of action has accrued for the commencement of an action upon a sealed instrument, and this applies to an action for the foreclosure of a mortgage. (*Acker* v. *Acker*, 81 N. Y. 143.) The rule was the same under the former Code. (Sec. 90.) Under the Revised Statutes the lapse of twenty years from the accruing of a right of action on a sealed instrument for the payment of money, created a presumption of payment, which might be repelled by proof of payment of some part, or by a written acknowledgment of such right within that time. (2 Rev. St. 301, § 48.) Prior to the Revised Statutes an action for the foreclosure of a mortgage was not within any Statute of Limitations in this state, but courts of equity, in analogy to limitation at law, held that, in the absence of explanation, the remedy by foreclosure was barred where there had been a delay of twenty years between the accruing of the right of action and the filing of the bill, on the presumption that the mortgage had been paid. (*Giles* v. *Baremore*, 5 Jo. Ch. 545.) The Statute 21 Jac. 1, c. 16, upon which most of the Statutes of Limitation in the

several states prescribing the period of limitation of actions at law have been modeled, contained no provision on the subject of the effect of acknowledgments or payments in renewing or continuing the debt, but the courts of England, by a species of judicial legislation grafted on to the statute exceptions founded on these circumstances, and they have been embodied in the subsequent English statutes. Lord Tenterden's Act (9 Geo. IV, ch. 14, § 1) required that where an acknowledgment was relied upon to take a case out of the statute, the acknowledgment should be in writing, signed by the person to be charged thereby, but it did not deal with the effect of a part payment, nor define by whom it might be made nor who should be bound thereby. It left the subject to be regulated by the courts. (See CHITTY, J., *In re Hollingshead,* L. R., 37 Ch. Div. 651.) The statutes of this state have in the same way left the subject of what constitutes a part payment and its effect to judicial exposition. The provision of the present Code, which is substantially a re-enactment of section 110 of the former Code, is the only statutory rule in this state on the subject. It declares that " An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take a case out of the operation of this title. But this section does not alter the effect of a payment of principal or interest." The section primarily relates to actions on contracts for the payment of money. But it leaves the effect of a part payment undefined. It does not declare that the payment must be made by the debtor, or by a person obligated to pay the debt, or, if made by one of several joint debtors, whether such payment shall operate against all. The effect of a part payment in any case, and against whom it shall operate, is to be determined by the principles established by the decisions of the courts applicable to the subject. The question has most frequently arisen in actions of assumpsit brought upon promises for the payment of money, against the party to the contract, in which the Statute of Limitations has been interposed as a defense, and the general principle has

been asserted with great uniformity that a part payment, available to take the case out of the statute, must have been made by the debtor or his authorized agent, or if made originally without his authority, it must have been subsequently adopted by him as his act. This view is founded upon the reason upon which a part payment is held to renew or continue a debt. Part payment of a debt by a debtor constitutes an admission by the person obligated to pay, of his liability for the whole debt upon which the partial payment is made, and justifies an inference of a new promise made at that time to pay the portion remaining unpaid. The courts acting upon this admission, and inferring therefrom the new promise, treat the contract as renewed from the time of the part payment, and the payment as giving a fresh start to the running of the statute. It is obvious that a payment by a stranger, or by a person not authorized to represent the debtor, affords no ground for assuming any admission on his part, or for inferring a new promise by him to pay the balance of the debt, and a payment not made by him or by his authority cannot, therefore, arrest the running of the statute. But in the application of the doctrine that a part payment within the statute must be made by the debtor or by his authority, there has been much diversity of judicial opinion. The effort has been frequently made to have it adjudged that whenever the person making the payment is under a liability to answer for the debt upon which the payment is made, a part payment by him will inure as a payment by all the parties bound by the same obligation, and will be treated in applying the statute as if made by all. The decision of Lord MANSFIELD in the leading case of *Whitcomb* v. *Whiting* (Doug. 652), that a payment made by one of four joint and several makers of a promissory note, took the case out of the statute as to all, was placed on the ground that there was a *quasi* agency created by the contract whereby the act of one was binding upon the others. The doctrine of *Whitcomb* v. *Whiting* was followed in some of the earlier cases in this state, but was finally repudiated in the case of *Van Keuren* v. *Parmelee* (2 N. Y. 523), and it has

come to be the established doctrine here that a part payment of a debt by one of two or more joint contractors does not take the case out of the statute as to the others, and this whether such payment is made before or after the debt has been barred. (*Shoemaker* v. *Benedict*, 11 N. Y. 177.) The existence of a common liability of several for a debt does not of itself make each the agent of the others, to bind them by part payment. The court has in a great variety of cases enforced with great strictness the rule that a part payment must be made by the debtor or by his authority in order to take the case out of the statute. This has been held in respect to a payment by a surety, unless at the request of the principal (*Winchell* v. *Hicks*, 18 N. Y. 558); by the assignee of an insolvent debtor (*Pickett* v. *Leonard*, 34 N. Y. 175); by the application by the creditor of money derived from collateral securities assigned to him by the debtor (*Harper* v. *Fairley*, 53 N. Y. 442); by the maker of a note, of interest, as against the indorser. (*McMullen* v. *Rafferty*, 89 N. Y. 456.)

In determining the question whether the payment by the heirs of Alanson and Daniel Lamb of the sum of one dollar on the mortgage, continued the lien as against Mrs. Waterman, it is important to consider her and their relation to the debt and the property embraced in the mortgage. Neither Mrs. Waterman nor her grantors had assumed or were under any personal liability for the mortgage debt. The mortgage remained a lien on the land conveyed to Palmer in 1871, but in equity the north half of the lot was chargeable with the mortgage debt and was first liable to be sold on foreclosure. The fact that Palmer paid full value for the south half of the lot did not alter the rights of the mortgagees. Their mortgage remained a lien as well on the part of the lot sold to Palmer, as upon the part remaining unsold. But Palmer and his grantees, so far as appears, had never been called upon for payment. The Lamb heirs stood in a double relation to the mortgage debt. Their half of the lot was subject to the mortgage and primarily chargeable. They also as heirs of one or

the other of the mortgagors, having acquired title to the mortgaged premises by descent, were liable under the statute (1 Rev. St. 749, § 4) to satisfy or discharge the mortgage out of their own property. The statute was recently construed in *Hauselt* v. *Patterson* (124 N. Y. 349), and it was held in substance that the liability of heirs or devisees was limited to the property descended or devised, or its value in case of alienation. Assuming that the right to a remedy under this statute was not barred by the lapse of time, the Lamb heirs, who made the payment of August 8, 1885, may have been under a liability which could have been enforced against their property other than that embraced in the mortgage, depending upon whether they took any other than the mortgaged premises by descent. But in no other way were they liable for the mortgage debt. The mortgagees demanded and accepted from the Lamb heirs the nominal payment made August 8, 1885, with full knowledge of the conveyance to Palmer in 1871, as a condition of forbearing a foreclosure of the mortgage, and it was paid by them for the sole purpose of protecting their title. It undoubtedly preserved the lien of the mortgage upon the part of the land owned by them. But to give it the further efficacy of continuing the lien on the part of the property in which they had no interest, implies that they were the agents of Mrs. Waterman to renew the mortgage as to her, a relation which has no support in the evidence. It could not we apprehend be successfully contended that the payment by the Lamb heirs would have renewed the debt as against the administrators of the mortgagors, and much less we think can it be claimed that it continued the lien of the mortgage as against Mrs. Waterman. It was held by the chancellor in *Mooers* v. *White* (6 Jo. Ch. 373) that an acknowledgment by an executor or administrator would not bind the real assets in the hands of the heir or devisee so as to affect the right of either under the Statute of Limitations. The question is not the same as it would have been if, during the running of the statute, but after their conveyance, the mortgagors had made a partial

payment on the debt. It has been held that a partial payment by a mortgagor on the debt, even after he had conveyed the premises mortgaged, would continue the lien of the mortgage. (*N. Y. Life Ins. & Trust Co.* v. *Covert,* 6 Abb. Pr. [N. S.] 154, Ct. Appeals; *Hughes* v. *Edwards,* 9 Wheat. 489.) The mortgage is an incident to the debt, and when payments are made by the debtor, the mortgagee is not called upon to inquire how the mortgagor has dealt with the equity of redemption. If the mortgage is recorded the purchaser has constructive notice of its existence, and a dealing with the debt between the debtor and creditor in the usual course is to be expected. The mortgagors until at least the debt is barred represent all persons interested in the land. If not recorded and the grantee purchased in good faith for value, without notice, then the lien of the mortgage is destroyed. But upon the death of a mortgagor personally bound to pay the debt, a new situation arises. His personal representatives become liable to the extent of the personal assets. If the mortgaged premises descend to his heirs or are devised, they are the primary resource in exoneration of the personalty, unless (in case of a will) the testator otherwise directs. (1 Rev. St. 749, § 4.) If during his life the mortgagor had conveyed the equity of redemption, his grantee does not become personally liable for the debt unless he assumed its payment, but the land remains subject to the pledge whatever may be the form of the conveyance. But upon the death of the mortgagor, after having conveyed the land, the personal liability is separated from the ownership of the land. Where the equity of redemption has been conveyed in parcels, without any personal covenant by the grantees to pay the debt, the land alone as between them and the mortgagees is liable. The judgment below proceeds upon the doctrine that the owner of one parcel acting separately, and independently of the owner of the other parcels, may by payment continue the lien of the mortgage beyond twenty years, not on his own parcel alone, but on all the parcels. He could not do this by a written acknowledgment, as such an acknowledgment must

under the statute be made by "a person to be charged thereby," and a payment by the owner of one parcel ought not, we think, to be given any greater effect. It would be an admission of the debt, but an admission *sub modo* affecting only the party making it. The payment would create no personal liability, even against him. He could not bind the owners of the other parcels by his admission, because he would neither in law nor in fact represent them. Payment by an heir or devisee, as such, is, we think, subject to the same limitation. It would continue his liability under the statute to the extent of the real assets in his hands, but would have no effect against the owners of the equity of redemption in arresting the running of the statute. A partial payment continues the debt on the theory that it implies a new promise, but the new promise can be implied only against the person making the payment, or when made in his behalf by one who, in law or in fact, is authorized to bind him.

We have found no authorities directly upon the question presented in this case. The case of *Roddam* v. *Morley* (1 DeG. & J. 1) involved the question whether a payment by a devisee for life, of interest on a specialty of his testator, in which the heirs were bound, was an acknowledgment "by the party liable by virtue of such specialty," within the meaning of the 5th section of the Act 3 and 4 Will. IV., c. 42, and as such was sufficient to keep the right of action alive against the parties interested in remainder, and it was held that it was. The principle of this decision is very clearly set forth by CHITTY, J., in the case *In re Hollingshead* (L. R., 37 Ch. Div. 651–659), which involved a similar question as to the liability of devisees on a simple contract of the testator. Speaking of *Roddam* v. *Morley*, he says: "The right principle to adopt is, that so far as the real estate is concerned, there is no one else but the tenant for life to pay the interest; that in making such payment he represents the whole estate; that the payment is an admission of the liability to the debt, affecting the real estate of which he is in possession; it is sufficient evidence of the continuance of the testator's con-

tract to pay the debt, or (if it be necessary to have recourse to the somewhat subtle doctrine of a promise to pay) it is a promise to pay out of such real estate, which he, as the person in possession of such real estate is competent to give on behalf of the real assets generally and so as to bind them who take in remainder." These two cases proceed distinctly on the ground of implied agency. In *Coope* v. *Cresswell* (L. R., 2 Ch. App. 112) Lord CHELMSFORD questioned the decision in *Roddam* v. *Morley*, although not governing the case then before him. In *Coope* v. *Cresswell* the bill was filed in behalf of certain specialty creditors of a decedent to have the debt raised out of certain devised estates. The testator devised certain real estate to trustees in trust for E. for life, and other real estate to the same trustees for the payment of debts. All the real estate was, under the English statute, assets for the payment of debts. The owner of the equitable life estate pleaded the Statute of Limitations, and the court sustained the defense, holding that payment within twenty years of interest on the debt by the trustees, was not sufficient to take the case out of the statute as to the equitable life tenant. In *Dickenson* v. *Teasdale* (1 De G., J. & S. 52) it was held by Lord Chancellor WESTBURY that where there were separate devises of lands to two nephews of the testator, all of which were charged with the payment of his debts, that payments made on the bond in question by one of the devisees after the death of the testator, was not an answer to the plea of the statute by the other. *Pears* v. *Laing* (L. R., 12 Eq. 41) was a decision by Sir JAMES BACON, V. C., upon very complicated facts, involving the Statute of Limitations. Certain payments of interest had been made by Ann Heron, a devisee and legatee, after the death of the testator, on a mortgage executed by him in his lifetime, and the question was whether the mortgage was barred by the statute. The defense was overruled on two grounds, the payments made by Ann Heron, and, second, payments made by the trustee who held the title to the entire estate, which latter ground was regarded by the judge as controlling and decisive. Upon the facts assumed by the court in passing upon the

effect of the payments by Ann Heron, the decision seems to have little bearing upon the present discussion. In *Harlock* v. *Ashberry* (L. R., 19 Ch. Div. 539) it was held by Sir GEO. JESSEL, M. R., that payment by a tenant of part of a mortgaged estate, of rent due, made to the mortgagee on his demand, but without authority of the mortgagor, was not a payment within 3 and 4 Will. IV, c. 27, § 40, or 1 Vict. ch. 28, which will take a case out of the statute. (See, also, *Chinnery* v. *Evans*, 11 H. L. Cas. 115.)

The question presented in the case before us is important. It should be determined, in the absence of express authority, in the light of the principles upon which partial payments are held to be an answer to the statute. The guiding and controlling consideration is that the payment must be made by a party to the obligation, or by his authorized agent. If payment by one is relied upon to take the contract out of the statute as to another, it must be shown that the party who made the payment was in fact or in law the agent of the other in respect to his liability. When the person paying is bound, those in privity with him may be bound also. There is lacking in respect to the payment relied upon in this case to bind Mrs. Waterman, (1) any agency on the part of the Lamb heirs to act for her or to bind her interest in the land; (2) any power growing out of or incident to their relations to the land or to the debt, from which the law will imply an authority, and (3) the admission, inferable from the payment, construed in the light of the circumstances, was an admission simply that the mortgage was a subsisting lien on the part of the land then owned by them.

Our conclusion is that the judgment of the General and Special Terms should be reversed, with costs in all courts as to Mrs. Waterman, and that the judgment of the General Term be affirmed, with costs as against the other appellants.

All concur.

Judgment accordingly.