THE ÆTNA LIFE INSURANCE COMPANY *et al.*

*v.*

REBECCA M. MCNEELY *et al.*

*Filed at Springfield May 11, 1897.*

1. LIMITATIONS—*section 11 of Limitation act must be construed with section 16 of same act.* Section 11 of the Limitation act, (Rev. Stat. 1874, p. 675,) which provides that actions to foreclose mortgages must be begun within ten years after the right of action accrues, must be construed with section 16 of the same act, which provides for the removal of the bar of the statute from written evidences of indebtedness by payment or a new promise in writing.

2. SAME—*unauthorized payment by life tenant will not toll the statute as against remainder-man.* An unauthorized payment by the widow on a mortgage indebtedness upon property in which she has but a homestead and dower interest, will not operate to remove the bar of the Statute of Limitations from the indebtedness as against the heirs who own the fee.

*Ætna Life Ins. Co.* v. *McNeely,* 65 Ill. App. 222, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

This was a bill for partition, brought by Rebecca Mc-Neely, Maria Smith and Judea Ridings, against Mary Hurst, Susan Reece, Jasper Fanning and Newton Fanning, who were brothers and sisters, and the only heirs of Henry Fanning, deceased, to divide the following described lands, consisting of sixty-five acres: The north half of the south-west quarter of the south-west quarter, and the north-west quarter of the south-west quarter, and the north half of the south-west quarter of the north-east quarter of the south-west quarter of section 32, in township 13, north, range 9, west of the third principal meridian, in Morgan county, Illinois. After filing the bill, the two sisters, Mary Hurst and Susan Reece, and the two brothers, Jasper Fanning and Newton Fanning, were by amendment made parties complainant to the bill. At

the May term, 1895, of the court, the Ætna Life Insurance Company, and Benjamin L. T. Bourland, trustee, entered their appearance and filed a cross-bill, under which the life insurance company claimed to be the legal holder of a certain trust deed upon said real estate sought to be partitioned, which they prayed in the cross-bill might be foreclosed.

It appears from the record that Henry Fanning, on or about the first day of January, 1872, borrowed from the Ætna Life Insurance Company $1000, for which he gave the company his promissory note. He and Martha, his wife, executed a trust deed on the real estate above described to secure the payment of the money and interest on or before January 1, 1878. The interest was paid on the loan each year as it became due. On the first day of January, 1878, by a prior agreement, renewal papers were signed, and delivered in duplicate, by the insurance company and Henry Fanning, whereby said note for $1000, and the trust deed securing the same, were continued for a period of five years from the first day of January, 1878, by the terms of which renewal the said note became due on the first day of January, 1883. Prior to the first day of January, 1883, and on the 25th day of November, 1881, Henry Fanning died intestate, leaving surviving him his widow, Martha Fanning, and his children as hereinbefore named. There was no administration on the estate of Fanning. His wife remained in the possession of the farm as a homestead until the house on the premises was burned, on September 1, 1887, when she went to reside with her children, but she continued to control the land, receiving the rents, until she died, on February 17, 1892. The interest on the note and trust deed was paid by Fanding during his lifetime, to January 1, 1882. After his death his widow paid the interest to January 1, 1883, and on November 20, 1882, she paid $300 on the principal. She then procured an extension of the remaining $700 from January 1, 1883, to January 1, 1888, and she paid the

interest annually to the first day of January, 1887, the last payment having been made January 3, 1887. No steps were taken by the insurance company to enforce the collection of the remaining $700 due as against the land embraced in the trust deed, or as against the heirs of Fanning, until the cross-bill was filed, in May, 1895. To the cross-bill to foreclose the deed of trust the children and heirs of Henry Fanning pleaded the Statute of Limitations, and on the hearing on the pleadings and evidence the court entered a decree dismissing the cross-bill, and also decreed a partition of the lands as prayed for in the bill filed by the complainants. The decree was affirmed in the Appellate Court, and the insurance company and Bourland, the trustee, have appealed.

EDWARD P. KIRBY, for appellants:

A partner is held to be an agent of his co-partner, so that a payment made by him will bind his partners and toll the statute. *Faulker* v. *Bailey,* 123 Mass. 588.

A payment of interest is regarded as an acknowledgment of the debt, and from the acknowledgment a promise to pay the debt may, and ought, to be implied. *Lowery* v. *Geer,* 32 Ill. 383; *Sigourney* v. *Drury,* 14 Pick. 387; *Paris* v. *Hunter,* 10 Ill. App. 230.

The common law fixed no time as to the bringing of actions. Limitations derive their authority from statutes. *United States* v. *Thompson,* 98 U. S. 486.

The rights of one who has acquired title to property already mortgaged may be affected by the acts of the mortgagor. *Emory* v. *Keighan,* 88 Ill. 482.

BAILEY & SEDGWICK, also for appellants:

So long as the relation of mortgagor and mortgagee exists between the mortgagor in his lifetime or his heirs after his death, and the mortgagee, neither party in possession can interpose the statute as against the other. *Rockwell* v. *Servant,* 63 Ill. 426.

One claiming under a mortgagor is affected by partial payments made by him. *Emory* v. *Keighan*, 88 Ill. 489.

A payment of interest made by any person who, under the terms of the contract, was entitled to pay, and from whom the mortgagee was bound to accept payment, is a payment, from the date of which the Statute of Limitations commences to run. 13 Am. & Eng. Ency. of Law, p. 760, note 3, and cases cited.

Under section 11 of the Limitation act of 1872 the limitation begins to run from the last payment of interest on the debt. *Schifferstein* v. *Allison*, 123 Ill. 662; *Houston* v. *Workman*, 28 Ill. App. 626; *Kreitz* v. *Hamilton*, id. 566.

The words "in writing" qualify the words "new promise" only, and not the word "payment." *Bowles* v. *Keator*, 47 Ill. App. 28.

The tenant for life is bound to keep down the interest on incumbrances. 1 Am. Lead. Cas. on Real Prop. 209; *Cogswell* v. *Cogswell*, 2 Edw. 231; *Hunt* v. *Watkins*, 1 Humph. 498; *Mosley* v. *Marshall*, 27 Barb. 42; *Jones* v. *Sherrard*, 2 Dev. & B. Eq. 179; *Barnum* v. *Barnum*, 42 Md. 251.

A partial payment on a mortgage by the heirs of two joint and several mortgagors, owning part of the mortgaged premises inherited from the mortgagors, is binding as an acknowledgment of the debt upon a grantee of another part from one of the mortgagors, and the heirs of the other, and prevents the running of the statute in favor of such grantee. *Morduck* v. *Robinson*, 71 Hun, 320.

A part payment of principal or interest made by the mortgagor or his agent revives the mortgage and gives it a new lease of validity from the date of such payment, and a payment by one of two or more mortgagors while the mortgage is still operative will keep up the right of entry against all. 2 Wood on Limitations, (2d ed.) 556, note 4; *Roddam* v. *Morley*, 1 DeG. & J. 1; *Pears* v. *Lanig*, L. R. 12 Eq. Cas. 51.

Payment of interest made by a tenant for life has been held sufficient as against the remainder-man. (*Toph* v.

*Stephenson*, 1 DeG., M. & G. 40; *Roddam* v. *Morley*, L. R. 12 Eq. Cas. 1; *Pears* v. *Lanig*, id. 51.) So has a payment by the mortgagor's solicitor. (*Ward* v. *Carter*, L. R. 1 Eq. 29.) Or by any person having express authority, or so situated in reference to the property and the mortgage that the law will imply authority. *Chinnery* v. *Evans*, 11 H. L. Cas. 115.

J. O. PRIEST, and CHARLES A. BARNES, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The 11th section of the Limitation act (Rev. Stat. 1874, p. 675,) provides: "No person shall commence an action or make a sale to foreclose any mortgage, or deed of trust in the nature of a mortgage, unless within ten years after the right of action or right to make such sale accrues." This section of the statute must be construed in connection with section 16 of the statute enacted at the same time, which provides: "Actions on bonds, promissory notes, * * * shall be commenced within ten years next after the cause of action accrued; but if any payment or new promise to pay shall have been made, in writing, on any bond, note, * * * within or after the said period of ten years, then an action may be commenced thereon at any time within ten years after the time of such payment or promise to pay." In passing upon this Statute of Limitations in *Schifferstein* v. *Allison*, 123 Ill. 662, it was held that where a payment had been made on the mortgage indebtedness the statute commences to run from the time of the last payment. Here the mortgage debt became due on the first day of January, 1883, and under the plain terms of the statute it would become barred on the first day of January, 1893, unless the running of the statute was arrested by a payment on the mortgage indebtedness by the mortgagor or some other person who was obligated to pay the debt, or unless there was a valid promise of payment less than

ten years before the filing of the cross-bill. Henry Fanning, the person who owed the mortgage debt, died in November, 1881. It is not, therefore, claimed that he made any payment or promise of payment within ten years before the filing of the bill. No person was appointed administrator of the estate of Henry Fanning, deceased. There was therefore no payment or promise of payment by a legal representative of the estate of the mortgagor. Upon the death of Fanning, the mortgagor, the lands involved descended to his children, who were his legal heirs, subject to the dower and homestead rights of his widow, Martha Fanning. As the lands descended to the children of Fanning subject to the mortgage given to the insurance company, and as they were the owners, subject to the mortgage, holding title under the mortgagor and in the same way as he held the title, we are inclined to the opinion that if they had made a payment on the mortgage indebtedness, or promised payment to the mortgagee, within ten years before the filing of the cross-bill, such payment or promise would have arrested the running of the Statute of Limitations. But the heirs of Fanning made no payment whatever on the mortgage indebtedness, nor did they at any time promise to pay.

It is, however, contended, that the payments made by the widow prevented the running of the Statute of Limitations. Upon the death of Fanning the widow was entitled to an estate of homestead in the premises of the value of $1000, and under the statute she was entitled to dower. She had no interest in the fee, and upon her death all interest she had in the premises terminated. While she occupied the premises as a homestead she was entitled to pay the interest on the mortgage indebtedness, and if she chose to clear her homestead estate or dower right from the mortgage resting upon it she had the right to do so. At any time after the mortgage indebtedness was due she was entitled to compel the holders to accept payment. We think it is also clear that

a payment of either principal or interest by the widow would operate to arrest the running of the Statute of Limitations as to any proceeding which might be instituted under the mortgage as against her interest in the premises, but we perceive no ground upon which it can be held that a payment by her, without any authority whatever from the heirs who owned the fee, could stop the running of the Statute of Limitations as against a proceeding which might be instituted against them for the purpose of reaching their interest in the premises. She held one interest in the property and they held another. The mortgage held by the insurance company covered both of these interests. The interests of the respective parties were separate and distinct. The widow was under no obligation to pay the mortgage debt, and no obligation rested upon the heirs to do so. Neither party was legally bound to pay, and neither could be expected to do so except for the purpose of relieving his interest in the premises from the mortgage. As no joint rights or interests were held by the widow and heirs in the property, we see no ground upon which it can properly be held that their rights should be controlled by her unauthorized acts.

In *Kallenbach* v. *Dickinson*, 100 Ill. 427, we held, after a careful review of the authorities bearing on the question, that in the case of joint debtors a partial payment by one, without the knowledge, assent or subsequent ratification of the others, will not operate to bind the latter so as to authorize the inference of a new promise on their part, and therefore will not affect the defense of the Statute of Limitations as to them. If a payment by one joint debtor without the assent or ratification of the other will not arrest the running of the Statute of Limitations, upon the same principle the payment by a life tenant without the consent of the remainder-man should not affect his rights under the Statute of Limitations. In American and English Encyclopedia of Law, (vol. 13, p. 760,) in the

discussion of the subject, the author says:   "An acknowledgment or a payment must be made by the debtor or his authorized agent."  Here the widow, who made the payment, was not the debtor, nor was she the authorized agent of the debtor or owner of the fee in the premises.

We have been referred by counsel for appellants to *Roddam* v. *Morley*, 1 DeG. & J. Ch. 1, *Amos* v. *Mannering*, 26 Beav. 583, and *English* v. *Hollingshead*, 37 L. R. Ch. Div. 651, as authorities sustaining their view.   In the first case cited, as appears from the opinion of the court, a person died indebted on a bond in which the heirs were bound, and, having devised his real estate in strict settlement, the devisee for life entered into possession, and after keeping down the interest on the bond for about twenty years, died, and thereupon the tenant in tail in remainder came into possession.   The question arose whether the bond debt was to be considered as still subsisting, so as to be enforced against the real or personal assets of the obligor, or whether the Statute of Limitations was a bar, and it was held that the payment of interest by the life tenant arrested the running of the statute.   The other cases hold the same doctrine.   But the English cases all seem to proceed on the rule announced in *Whitcomb* v. *Whiting*, 2 Doug. 652, by Lord MANSFIELD, that the payment by one of the joint obligors is a payment by all.   This doctrine, as has been seen in the *Dickinson case*, has not been adopted in this country, but it was expressly repudiated in that case after a review of the authorities bearing on the question.   While, therefore, the English cases cited, and other like cases, seem to sustain the position of appellants, they cannot be regarded as authority in this case.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*