CATHERINE CLUTE, as Administratrix with the Will Annexed of the Estate of WILLIAM CLUTE, Deceased, Respondent, *v.* MARY B. CLUTE et al., Appellants.

Mortgage — Statute of Limitations — when payment of interest on mortgage by one of several owners of the equity of redemption prevents the running of the Statute of Limitations.

A payment of interest or part of the principal renews a mortgage so that an action may be brought to enforce it within twenty years after such last payment, and where there are several persons interested in the

equity of redemption such payment by one of them keeps alive the right of entry not only against him, but also against all other owners of the equity.

Where a co-tenant occupies premises for twenty-two years succeeding the maturity of a mortgage, reaping the fruits therefrom with the knowledge, acquiescence and concurrence of his brothers and sister, his co-tenants, it becomes his duty to preserve their interests in the property by making needful ordinary repairs, the payment of taxes and other annually maturing liens, including the interest upon a mortgage on the premises, and the payments so made are fairly deemed to have been made with the implied authority and consent of his co-tenants, thus preventing the running of the Statute of Limitations.

*Clute* v. *Clute,* 132 App. Div. 938, affirmed.

(Argued January 26, 1910; decided February 8, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 18, 1909, affirming a judgment in favor of plaintiff entered upon the report of a referee.

*Danforth E. Ainsworth* and *John D. White* for appellants. There is no evidence in the case that any payments have been made by way of principal or interest upon the mortgage by any of the defendants within twenty years preceding the commencement of this action. (*Baldwin* v. *Martin,* 14 Abb. [N. S.] 79; *Hulbert* v. *Nichol,* 20 Hun, 454; *Mason* v. *Henry,* 152 N. Y. 529; Wood on Limitations [3d ed.], 347; *Murphy* v. *Walsh,* 113 App. Div. 430; *Adams* v. *Olin,* 140 N. Y. 159; *Crow* v. *Gleason,* 141 N. Y. 489; 8 Ency. of Ev. 758; *Macauley* v. *Palmer,* 6 N. Y. Supp. 402; *Bean* v. *Tonnele,* 94 N. Y. 384.) There is no evidence to charge any of these defendants with knowledge of the execution or existence of this mortgage, and, hence, George M. Clute could not be held to be their agent in fact with reference to any action relating thereto. (*Tarbel* v. *West,* 86 N. Y. 288; *Ackerman* v. *Hunsicker,* 85 N. Y. 49.) Any payment made by the defendant George M. Clute upon the mortgage without the knowledge or authority of the other defendants is not effective as against the other children of John W. Clute to prevent the Statute of Limitations from running against

the mortgage. (*Murdock* v. *Waterman*, 145 N. Y. 55; *Boughton* v. *Harder*, 46 App. Div. 352; *Mack* v. *Anderson*, 165 N. Y. 529; *Keese* v. *Dewey*, 111 App. Div. 16; *Æ. L. Ins. Co.* v. *McNeely*, 166 Ill. 540; *Nickell* v. *Tracy*, 100 App. Div. 80; 184 N. Y. 356.)

*John F. Clute* for respondent. The recording of the mortgage was notice of the lien to all subsequent owners of the premises, even if they did not have actual knowledge. (*Ackerman* v. *Hunsicker*, 85 N. Y. 43; *Williamson* v. *Brown*, 50 N. Y. 354; *Suhler* v. *Signer*, 44 Barb. 606; *Anderson* v. *Blood.* 152 N. Y. 293.) The payment of interest upon a mortgage by a co-tenant binds all the other co-tenants. (*Smith* v. *Ryan*, 66 N. Y. 352; 2 Jones on Mortgages, 1198; Code Civ. Pro. § 395; 17 Am. & Eng. Ency. of Law [2d ed.], 696; *Hollister* v. *York*, 59 Vt. 1; *Downer* v. *Smith*, 38 Vt. 464; *Lawton* v. *Adams*, 13 Ohio C. C. 233; *Pears* v. *Laing*, L. R. [12 Eq.] 51; *Bailie* v. *Irwin*, 2 Ire. Rep. 614; *Roddam* v. *Morley*, 1 De G. & J. 1; Freeman on Co-tenancy, § 371; *Roberts* v. *Roberts*, 88 N. W. Rep. 289.) A tenant in common in possession of premises is the implied agent of his co-tenant. (*Arthur* v. *Arthur*, 76 App. Div. 330; *Ford* v. *Knapp*, 102 N. Y. 143; 17 Am. & Eng. Ency. of Law [2d ed.], 696; *McAlear* v. *Delaney*, 19 Wkly Dig. 252; *Edes* v. *Retherford*, 114 Ind. 273; Cooley on Taxation [2d ed.], 467; Story's Eq. Juris. § 505; *Gould* v. *C. C. Bank*, 86 N. Y. 75; *McMillan* v. *Raferty*, 89 N. Y. 459; *Shutts* v. *Finnegan*, 100 N. Y. 539; *McDonald* v. *McDonald*, 28 N. Y. S. R. 18.) .

HAIGHT, J. This action was brought to foreclose a mortgage.

On the 4th of September, 1873, William Clute conveyed his farm in Albany county to his son John W. Clute, who, on the same day, executed and delivered to his father a purchase-money mortgage for the sum of $10,000 payable in eight years from the date thereof, with interest, which mortgage was recorded in the Albany county clerk's office in Book No. 222 of Mortgages at page 50. William Clute died January

21, 1878, leaving no assets other than the mortgage in question, and leaving a last will and testament which was duly admitted to probate, in which he appointed his son Jacob H. Clute sole executor, who qualified as such and discharged the duties of such executor until his death in 1903. Thereupon the plaintiff, Catherine Clute, was appointed administratrix with the will annexed. John W. Clute, the mortgagor, entered into possession of the farm and paid the interest on the mortgage until his death, intestate, which occurred in February, 1882. He left surviving his widow, Mary B. Clute, with William H. Clute, George M. Clute, Edwin Clute, John Van Arnum Clute and Mary Elizabeth Clute, his only children and heirs at law. The widow having subsequently died, together with the son John Van Arnum Clute, who died unmarried and without children, the other children named became seized as tenants in common of the premises described in the complaint, subject to the lien of the mortgage.

The referee has found as facts that the year before the death of John W. Clute the defendant George M. Clute entered into the possession of the premises under an agreement to work the same on shares as the tenant of his father; that after the death of his father he entered into an agreement with Jacob H. Clute, the executor of William Clute, by which George agreed to pay to Jacob as such executor one-half of the proceeds of the mortgaged premises, and that from that time until the commencement of this action he has been in the actual and exclusive possession of the premises and during all of such period has had the entire control thereof, paying all of the taxes, insurance and other charges thereon and has annually paid to Jacob H. Clute, as executor of William Clute, one-half of the proceeds of the mortgaged premises, which was received by Jacob H. Clute as executor of William Clute, deceased, as and for the interest upon said mortgage; that the interest upon the mortgage was thus paid to Jacob H. Clute as such executor until his death in 1903, and that no part of the principal sum of $10,000 had been paid. And as conclusions of law the referee found:

" I. That the record of the mortgage sought to be fore-closed herein was constructive notice to the defendants William H. Clute, Mary Elizabeth Clute, George M. Clute and Edwin Clute and to each of them, of the existence of said mortgage and they and each of them are chargeable with such knowledge thereof, as reasonable inquiry would have disclosed.

" II. That all payments of interest on said mortgage made by the defendant George M. Clute to Jacob H. Clute, as executor of William Clute, deceased, mortgagee, were made on behalf of himself and the defendants William H. Clute, Mary Elizabeth Clute and Edwin Clute and were effectual to prevent the running of the statute of limitations in favor of them or either of them."

He further found as a conclusion of law the amount due upon the mortgage and ordered judgment for a foreclosure, etc.

The answer of the defendants denied that they had any knowledge or information as to the existence of the mortgage, except from hearsay, and that only recently ; that upon information and belief it had been paid. They also denied that any interest had been paid upon the mortgage to Jacob H. Clute as executor by George, and alleged that Jacob H. Clute claimed to be the owner of the premises, and that the payments made to him were as such owner ; and for a fur-ther defense they alleged that more than twenty years had run after the mortgage became due, and that, therefore, the action was barred under the Statute of Limitations.

Upon the trial the defendant George M. Clute was sworn as a witness for the plaintiff, and testified, in substance, that he went upon the farm to live in 1875 ; that his grandfather, William Clute, was then alive, and that in 1881 he entered into an arrangement with his father by which he was to work the place on shares, and at that time his father was the owner of it ; that his father died in 1882, while George was still in the possession of the farm, and that after that he made a bar-gain with his uncle, Jacob H. Clute, who was formerly the county judge of Albany county, which was the same as that made with his father, in which his uncle told him that

he should work it just as he had and give him half of the crops or half of the money received for the crops every year, and this he continued to do until the death of his uncle Jacob, which occurred in 1903, he paying him each year one-half of the proceeds of the farm. He, however, testified that he had no knowledge of the existence of the mortgage, and that he did not make the payments on account of the principal or interest on the mortgage. Each of the brothers and sister of George also testified that they knew nothing of the mortgage and had not paid or known of any payments being made as interest upon it. There was other evidence given by the plaintiff consisting largely of declarations and admissions by George and his co-tenants in common with reference to the family history and other knowledge of the existence of the mortgage, most of which was controverted. It, however, appears to be conceded by the co-tenants that George occupied the premises during the entire twenty-two years succeeding the maturity of the mortgage, with their knowledge and acquiescence; that their mother and grandmother lived with him for a time; that his sister Mary Elizabeth made it her home during the summers when she was not engaged in teaching school, and that the other brothers were there from time to time, so that George's occupancy of the premises was with their concurrence and was not in hostility to them.

Our conclusions are that there was evidence which sustained the findings of the referee, and that the only question remaining for our determination is as to whether the payments of interest on the mortgage made by George to Jacob H. Clute, as executor of William Clute, deceased, were effectual to prevent the running of the Statute of Limitations in favor of the co-tenants, William H., Mary Elizabeth and Edwin Clute.

Our attention has been called to no case in this state which expressly decides the question here presented. The chief cases upon which the appellants rely in this state are those of *Murdock* v. *Waterman* (145 N. Y. 55) and *Mack* v. *Anderson* (165 N. Y. 529). In the *Murdock* case the action was brought for the foreclosure of a mortgage, and the defense

interposed was that of the Statute of Limitations.  The prop-
erty mortgaged was a lot, upon which there were two dwell-
ing houses owned by the mortgagors.  Subsequently one of
the houses and the lot upon which it stood was sold and con-
veyed to Clarissa Waterman without any reference therein to
the mortgage.  Subsequently the other house and half of the
lot descended to the defendants Harriet Robinson and
Lucinda Lamb, who owned the same as tenants in common.
In August, 1885, one dollar was paid upon the bond and
mortgage by one of the tenants in common in the presence
and with the knowledge and approval of the other tenant in
common.  It was held that this payment prevented the run-
ning of the statute as to the two tenants in common, but that
it did not prevent the running of the statute against Clarissa
Waterman.  It will readily be seen that Clarissa Waterman,
having purchased and received a conveyance of one-half of
the premises without any reservation with reference to the
mortgage, became the owner thereof in fee, and in case of
foreclosure of the mortgage she had the right in equity to
have the remaining premises first sold and the proceeds
applied in payment of the mortgage.  She was not, as against
the owner of the other lot, under any obligations to pay the
mortgage nor was she a tenant in common with the other
defendants, nor bound by their acts, and consequently the
statute had run so far as she was concerned.  Chief Judge
ANDREWS, in delivering the opinion of the court, examined
many authorities upon the subject both in this country and
in England, after which he concluded with the statement: " The
guiding and controlling consideration is that the payment must
be made by a party to the obligation, or by his authorized agent.
If payment by one is relied upon to take the contract out of the
statute as to another, it must be shown that the party who made
the payment was in fact or in law the agent of the other in
respect to his liability.  When the person paying is bound,
those in privity with him may be bound also."  (p. 69.)

In *Mack* v. *Anderson* (*supra*) the case was similar to that
of *Murdock* v. *Waterman.*  In that case the mortgaged

premises had also been divided and sold, and one of the purchasers had assumed the debt. It was held that where the mortgagor had made no payments on the mortgage debt for twenty years, the payments thereon by grantees of a portion of the premises, who had assumed the debt, did not arrest the operation of the Statute of Limitations in favor of the grantees of the other parcel, who had not assumed the payment of the mortgage debt and had neither made nor authorized the payment upon the mortgage.

It will readily be seen that the foregoing cases do not reach the question we have under consideration. In this case, as we have seen, George had been left in the sole occupancy and possession of these premises for twenty-two years succeeding the maturity of the mortgage, with the knowledge, acquiescence and concurrence of his brothers and sister. He, being in sole possession and receiving all of the profits derived from the farm, is deemed to have undertaken to discharge certain duties to his co-tenants which are analogous to that which a tenant for life owes to his·remainderman — that of preserving the property by making needful, ordinary repairs, payment of taxes and other annually maturing liens,.such as interest upon a mortgage. (Washburn on Real Property, § 238; *Arthur* v. *Arthur*, 76 App. Div. 330; *McAlear* v. *Delaney*, 19 Wkly. Dig. 252; *Ford* v. *Knapp*, 102 N. Y. 135; *Rothwell* v. *Dewees*, 2 Black [U. S.], 613; *Peck* v. *Peck*, 110 N. Y. 64, 73; *Griffith* v. *Robinson*, 14 Ill. App. 377; *Carter* v. *Penn*, 99 Ill. 390, 395; *Eads* v. *Retherford*, 114 Ind. 273; *Downer* v. *Smith*, 38 Vt. 465; Cooley on Tax. [2d ed.] 467.)

In Washburn on Real Property (§ 882) it is said with reference to the duty of one co-tenant to the others that " their possession being common, and each having a right to occupy, not only will such possession, though held by one alone, be presumed not to be adverse to his co-tenant, but it is, ordinarily, held to be for the latter's benefit, so far as preserving his title thereto, the possession of one tenant in common being deemed to be the possession of all." Also, it has been held " to be a fraud in one co-tenant to suffer the common property

to be sold for taxes, and to purchase it in himself; and if he do so, the tax title inures to the common benefit." Again, at section 894, he says: " One tenant in common cannot force his co-tenant to contribute to the cost of improvements; but the expenses which one tenant is subjected to for the preservation of the common property will, in equity, be ratably apportioned among all of the tenants. The expense, therefore, of necessary repairs, as well as the cost of preserving the title, as by paying off a mortgage, purchasing an outstanding title, paying taxes, assessments, and the like, will be apportioned among the several tenants, although it was borne in the first instance by one."

In *Dubois* v. *Campau* (24 Mich. 360) it was held to be the duty of a tenant in common in possession of the whole estate " to keep down the taxes on the whole during his occupancy." Taxes are a lien and incumbrance upon the land, and if it be the duty of the tenant in common to pay the taxes, it would seem to follow also that it would become his duty to pay the interest maturing upon a mortgage, which also becomes a lien and incumbrance upon the land.

If George, by his sole occupancy and possession, reaping the fruits derived from the premises, owed a duty to his co-tenants to preserve their title thereto, he, in the discharge of that duty for them, must be deemed authorized to pay the interest maturing from year to year upon the mortage, as well as the taxes assessed thereon. He in effect became their agent, authorized to do that which was necessary to preserve their estate; and while there may not have been any express authorization by them to make such payments, such authority is fairly implied under the circumstances of this case. Such is the rule laid down by Chief Judge ANDREWS in the case of *Murdock* v. *Waterman*, to which we have already referred.

Our sister states are not in entire harmony with reference to payments which would prevent the running of the Statute of Limitations. In *Hollister* v. *York* (59 Vt. 1) it was held that a payment of the interest or a part of the principal of a mortgage debt by one of several parties who are interested in the equity of redemption and who have had constructive

notice, repels the presumption that the mortgage has been paid and takes the case out of the operation of the Statute of Limitations, not only as to the payer, but also as to all of the owners of the equity. In Jones on Mortgages (at § 1198) it is said that "A payment of interest or part of the principal renews the mortgage, so that an action may be brought to enforce it within twenty years or other period of limitation after such last payment. This is a rule universally recognized. Where there are several persons interested in the equity of redemption, such payment by one of them keeps alive the right of entry not only against him, but also against all other owners of the equity." (*Kendall* v. *Tracy*, 64 Vt. 522; *Richmond* v. *Aiken*, 25 Vt. 324; *Pears* v. *Laing*, L. R. [12 Eq.] 41, 51, 54; *Roddam* v. *Morley*, 1 DeG. & J. 1; *Lawton* v. *Adams*, 13 Ohio Cir. Ct. 233; Freeman on Co-tenancy, § 371.)

In the case of *Ætna L. Ins. Co.* v. *McNeely* (166 Ill. 540) it was held that a payment by a widow on a mortgage indebtness upon property in which she had a dower interest did not operate to remove the bar of the Statute of Limitations as against the owners of the fee. The case of *Keese* v. *Dewey* (111 App. Div. 16) is not distinguishable from the cases of *Murdock* v. *Waterman* and *Mack* v. *Anderson*, above referred to. The mortgage covered three separate parcels of real estate, one of which was owned by the defendant Martin Dewey. It was held that payments made upon the mortgage by the owners of the other parcels, without his knowledge or consent, did not prevent the running of the statute as to him.

We do not, at this time, propose to enter upon any analysis of the foregoing cases or to approve or disapprove of the conclusions reached therein; for, in disposing of this case, we prefer to adhere to the rule suggested by Chief Judge ANDREWS in the *Murdock* case and hold that since George, one of the co-tenants, had occupied the premises for twenty-two years succeeding the maturity of the mortgage, reaping the fruits therefrom with the knowledge, acquiescence and concurrence of his brothers and sister, his co-tenants, it became his duty to preserve their interests in the property by making need-

ful ordinary repairs, the payment of taxes and the other annually maturing liens, including the interest upon the mortgage, and that the payments so made are fairly deemed to have been made with the implied authority and consent of his co-tenants, thus preventing the running of the Statute of Limitations.

Upon the trial a number of exceptions was taken to the admission and rejection of evidence. The testimony taken ranged over a wide field, quite remote from the issues involved in this case, and doubtless some of the rulings were erroneous, but we are unable to see how such rulings affected the result. Under the conceded facts the inquiry was virtually narrowed to the question as to whether the payments which George concededly made to his uncle Jacob were made to be applied upon the interest maturing upon the mortgage, and this depended upon the question as to whether the tenants in common knew of the existence of the mortgage. If they did then the payments would be presumed to have been made to apply thereon. It is true that the answer alleges that Jacob Clute claimed to be the owner of the premises, and consequently it is claimed that the payments were made to him as such owner. He, in fact, was the executor of his father's estate and as such held the mortgage in question, and if on the death of the father of the tenants in common they surrendered possession to him by George's entering into a lease with him to work upon shares, thus constituting Jacob a mortgagee in possession, and he was thus treated for upwards of twenty years, George leasing the premises from year to year, working them upon shares and paying to him one-half of the proceeds, it is difficult to see how the situation of the tenants in common would be better than it now is; for, after the expiration of twenty years the Statute of Limitations would have run with reference to them; preventing their right to redeem. (Jones on Mortgages, § 1144.)

The judgment should be affirmed, with costs.

CULLEN, Ch. J., WERNER, HISCOCK and CHASE, JJ., concur; GRAY and WILLARD BARTLETT, JJ., dissent.

Judgment affirmed.