**Lizzie M. Holroyd, Defendant in Error, v. Edgar B. Millard et al., Plaintiffs in Error.**

**Gen. No. 4,957.**

1. STATUTE OF LIMITATIONS—*when loss clause of insurance policy not sufficient to prevent running of.* The fact that an insurance policy issued to a mortgagor contains a loss clause in favor of his

mortgagee, against whom the Statute of Limitations has been invoked in foreclosure proceedings, does not prevent the operation of such statute, in the absence of proof of knowledge on the part of such mortgagor that the policy in question had been so made payable.

2. STATUTE OF LIMITATIONS—*when does not bar foreclosure, notwithstanding debt secured is barred.* The mortgage of several parties may be foreclosed as to all .of such parties, notwithstanding the note secured by the same is barred as to one of the makers, if the same has been kept alive as to the other by payments made by him.

3. EVIDENCE—*when question of competency of witnesses cannot be raised.* Parties cannot permit witnesses to testify in the apparent hope of gaining an advantage, and then, for the first time upon appeal, question their competency.

4. EVIDENCE—*when objection not sufficient to raise question of competency.* A general objection as to the competency of a witness participated in by all defendants to a cause, is not sufficient to raise the question of the competency of such witness as against one of such defendants if the evidence of such witness be competent as to any of such objecting defendants.

5. FINDINGS OF FACT—*when, by chancellor will not be disturbed.* The findings of fact by a chancellor will not be disturbed even though findings of fact by a chancellor will not be disturbed even though he has admitted the evidence of an incompetent witness if there is sufficient competent evidence in the record. to sustain the findings made.

Foreclosure. Error to the Circuit Court of DeKalb county; the Hon. CHARLES A. BISHOP, Judge, presiding. Heard in this court at the April term, 1908. Affirmed. Opinion filed August 10, 1908.

J. B. STEPHENS and JONES & ROGERS, for plaintiffs in error.

GEORGE BROWN, for defendant in error; W. C. KELLUM, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

On December 3, 1890, Harriet F. Millard and Edward B. Millard, her husband, executed their promissory note for $500 with interest at eight per cent. per annum until paid, due one year after date, and payable to Lizzie M. Brown. The consideration was princi-

pally the payment of a prior note signed by both makers. The rest was a new loan of money which E. B. Millard afterwards used in his business. To secure said note, the makers on the same day executed their mortgage upon a lot in the village of Genoa, in DeKalb county, occupied by them as a homestead, the title to which was in Mrs. Millard. By marriage, Lizzie M. Brown became Lizzie M. Holroyd. Interest was indorsed as paid upon the note, the last indorsement being dated January 12, 1897, and it covered the interest to December 30, 1896. Mrs. Millard died January 14, 1906, intestate. On December 14, 1906, Mrs. Holroyd filed this bill to foreclose said mortgage for the payment of the balance due upon said note, making defendants thereto E. B. Millard, the surviving maker, and the heirs at law of Mrs. Millard, deceased, two of whom were minors, and the rest adults. The minors filed an answer by a guardian *ad litem,* and the adult defendants and one of the minors filed a plea of the ten-years' Statute of Limitations. There was a hearing, and a decree of foreclosure; to reverse which the defendants below have sued out this writ of error.

Section 11, chapter 83, of the Revised Statutes relating to limitations, enacts that no person shall commence an action to foreclose a mortgage unless within ten years after the right of action accrues; and section 16 requires actions on promissory notes to be commenced within ten years next after the cause of action accrues, but provides that if any payment shall have been made on such note within said ten years, then the action may be commenced at any time within ten years after the time of such payment. E. B. Millard paid the interest above referred to. Complainant did not prove that Mrs. Millard, the owner of the mortgaged land, was a party to the payment or consented thereto or had any knowledge thereof, except as the same might inferentially appear from the fact that on July 23, 1902, more than ten years after the original

maturity of said note, a policy of insurance on the house on this property, which must have been made out in her name, contained a provision "the loss, if any, payable to Dillon S. Brown or Brown and Brown or Lizzie Holroyd, as her interest as mortgagee may appear," or some such language. In the absence of proof that Mrs. Millard saw this insurance policy or knew of this provision, that indorsement was insufficient to show that this debt was kept alive with her knowledge and consent. It is therefore clear that at the time of her death, under the proofs here, Mrs. Millard was discharged from the debt. The question is whether this mortgage could still be foreclosed against her, and can be foreclosed against her heirs at law succeeding to her title.

No case exactly in point, decided by our Supreme Court, has been called to our attention, but there are a number of decisions more or less analogous in principle. In Emory v. Keighan, 88 Ill. 482, Tiner gave Truesdale a real estate mortgage to secure his note due February 12, 1858. At that time the period of limitation was sixteen years. On November 11, 1875, Cochrane, assignee of Truesdale, published notice to foreclose under a power of sale, and made a deed of the premises on December 10, 1875, under such power of sale. Title under this deed was set up as a defense as outstanding title in an ejectment suit. The court held that the debt was barred, and that the attempted foreclosure passed no title. The court said that no proof was offered to show that the debt had been kept alive by later payment or by part payment at a later day, or by an action on the note before the Statute of Limitations had run, carried to judgment. The court also said that the rights of one holding under the mortgagor may be affected by payment of interest by the mortgagor after maturity and before the Statute of Limitations has run, although he be a party to neither; that the grantee of the mortgagor, though not a party to the payment of interest, is affected thereby so far as

regards his defense under the Statute of Limitations; that if defendant had proved a payment on the debt less than sixteen years before the sale under the mortgage, this would have shown validity in the mortgage at the time of the sale and paramount title in the purchaser, if the sale was otherwise valid. It was held that the defendant could have availed himself of any fact which showed that the Statute of Limitations had not run against the mortgage debt. Schifferstein v. Allison, 123 Ill. 662, was a suit begun in 1886 to foreclose a mortgage securing a note due October 23, 1875. Several payments had been made, the last on December 12, 1882. The present Statute of Limitations above referred to applied to this debt and was set up in defense. It was held that the mortgage confers, not upon its holder, but upon the holder of the debt, the right to resort to the property for its payment; that the right to foreclose can only accrue under the debt; and that the right accrued after the last payment upon the debt, as the cause of action is deemed to have accrued after the occurrence of that which is held to revive the cause of action. In Hibernian Banking Association v. Commercial National Bank, 157 Ill. 524, it was held that the mortgage is a mere incident to the debt, and is barred when the debt is barred, and not before. In Waughop v. Bartlett, 165 Ill. 124, it was recognized that one joint maker cannot, by a payment, stop the running of the statute against another joint maker unless he was the agent for that purpose; but it was held that where a joint maker of a note has authority from his co-maker to make payment on the debt his acts will bind his co-maker and bring a debt otherwise barred within the statute. Roberts v. Tunnell, 165 Ill. 631, was a bill filed January 11, 1895, to foreclose a mortgage securing a note due February 4, 1880, and given by Allen, who died in 1887. Because of delay in administration, a suit at law could have been maintained against the administrator at the date when the bill was filed, against which the Statute of Limita-

tions could not have been successfully interposed. The title to the mortgaged premises had passed to heirs. It was held that the mortgage was but an incident to the debt, and that the period of limitation would not expire till the debt was barred; that as long as the debt was alive and an action could be maintained on the note, the owner of the debt could foreclose the mortgage. In Aetna Life Insurance Co. v. McNeely, 166 Ill. 540, it was held that payment by the widow of the debtor, she not being liable for the debt, and making payment only to protect her homestead, covered by the mortgage to secure the debt, did not keep the mortgage alive against the heirs. Richey v. Sinclair, 167 Ill. 184, was a foreclosure suit. The statute would have become a bar to the debt secured by the mortgage on February 5, 1890, if the mortgagor who owed the debt had remained in the state. He left the state on June 1, 1884, and did not return. By another provision of our statute where the debtor leaves the state after the cause of action accrues the time of his absence is not a part of the time limited for the commencement of the suit. He conveyed the land. The bill was filed January 4, 1895, against his grantees. The mortgagor and debtor was not made a defendant to the foreclosure. It was held that the fact that the mortgagor was not a defendant was immaterial and that the Statute of Limitations had not run against the debt, and was not a defense, and that if the debt had not been paid or barred, the mortgage could be foreclosed. The court said, "So long as the mortgage indebtedness exists as a binding obligation against the mortgagor, the mortgage securing that indebtedness may be foreclosed." The court reiterated its holding in Emory v. Keighan, *supra*, that one holding under the mortgagor may be affected by a payment on the mortgage debt, though he is not a party to it, so far as regards a defense under the Statute of Limitations. In Murray v. Emery, 187 Ill. 408, Poucher had given notes evidencing the purchase money of land conveyed to

Spaulding; and Spaulding gave a trust deed to secure
said notes, the last of which matured on March 13,
1877. It was held immaterial why Poucher signed the
notes instead of Spaulding. Spaulding conveyed the
land to Butler, who assumed the encumbrance. Butler
conveyed to Harts, who assumed the encumbrance.
The notes had been assigned to one Hart, to whom
Harts paid interest on the debt for nearly twenty
years. Harts then signed an agreement specifying
that the delay to enforce payment had been at his re-
quest, and that in consideration thereof he would not
set up the Statute of Limitations against any suit to
foreclose, and that this agreement should bind his heirs
and assigns. Hart died, and Emery became his execu-
tor. Harts conveyed the land to Murray in 1897.
Murray claimed to have bought the land without knowl-
edge of the encumbrance, and filed a bill against Emery
and others to remove the trust deed as a cloud on his
title. Emery and others filed a cross-bill to foreclose
the trust deed. This was over twenty years after the
maturity of the notes by their terms. The special
agreement between Harts and Hart was not of record.
It was held that the indebtedness had been kept alive
by the payments made by Harts, who, though not the
original debtor, had agreed to pay the debt, and that
while Harts owned the property the Statute of Limita-
tions would be no defense to a foreclosure; and that
when Murray took title from Harts the public records
notified him that the property was subject to this trust
deed, which was not barred unless the debt it secured
was barred. Kraft v. Holzmann, 206 Ill. 548, was a
suit to foreclose a trust deed given to secure a note
which matured by its terms on May 15, 1888. On May
15, 1893, the makers wrote upon the back of the note
an extension of the time of payment to May 15, 1898.
The extension agreement was not recorded. The bill
to foreclose was evidently filed much more than ten
years after the original maturity of the debt. Holders
of later liens resisted the foreclosure. It was held

that when the time of payment has been extended by payment or otherwise, the statute will not run against the note; that it was not necessary to record the extension agreement, but that persons subsequently dealing with the land were bound to take notice of the unreleased trust deed and to ascertain at their peril whether the debt secured by it had been paid or barred, or the lien had ceased to exist. "It was not necessary that subsequent encumbrancers or purchasers should have notice of any such extension. The recording· of the deed of trust gave all the notice necessary to be given."

In some other jurisdictions a different rule prevails, and it has been followed by one or two Appellate Court decisions in this state to which our attention has been called. The fact that a different construction has been given in other states to statutes somewhat similar to our own is recognized in Kraft v. Holzmann, *supra*. There are several cases in Kansas quite similar to the one now before us, which were there determined in harmony with the principles approved by our Supreme Court. In Perry v. Horack, 63 Kan. 88, husband and wife executed a note and a mortgage to secure it upon their homestead. The husband died. The widow made payment which avoided the Statute of Limitations as to her. A suit to foreclose was begun by the owner of the note against the widow and children. It was held that the widow was liable for the entire debt and that the mortgage was given to secure the entire debt, and that as the payment made by the widow kept the debt alive as to her, if the payments were treated as made for herself alone, the mortgage would still be enforceable against the interests of the heirs of the husband. In Jackson v. Longwell, 63 Kan. 93, husband and wife had given two notes and two mortgages securing them upon the individual real estate of the wife. Payments were relied upon to avoid the Statute of Limitations. It seems that the payment on the first note secured by the first mortgage had not been made by the wife, and

it was urged that there could be no foreclosure of that mortgage to secure that note. It was held that the wife mortgaged the property, not only to secure the joint obligation of herself and husband, but also the obligation of the husband as fully as it secured the obligation of the wife; that the Statute of Limitations having run in favor of the wife, she was discharged from personal liability on the note and sustained the same relation to it as though she had never signed it, but that this did not affect her agreement that her property should be subject to the payment of her husband's debt, evidenced by the note, and that the case was the same as though the owner had signed the note when it was made, and both had given a mortgage to secure it, and that a decree of foreclosure was proper. In Skinner v. Moore, 64 Kan. 360, a note executed by a husband alone was secured by a mortgage executed by the husband and wife on real estate occupied by them as a homestead. The husband made payments of interest upon the note without his wife's knowledge, which prevented the Statute of Limitations from running against the note as to the husband at the time when the suit to foreclose was brought. It was held that the court below erred in refusing foreclosure; that recovery on the note was not barred; that no one but the husband was bound to pay the debt; that the mortgage secured the payment of the note so far as it was a valid and existing demand against the maker.

If this mortgage had been so worded as to secure only the liability of Mrs. Millard upon the note, then foreclosure would have been barred, as Mrs. Millard, so far as the proof here shows, had ceased to be liable on the note before she died. But the mortgage secured also the liability of E. B. Millard on the note. When this bill to foreclose was filed, E. B. Millard was still liable on the note, because the running of the Statute of Limitations had been arrested by the payment by him of interest on the note up to December 30, 1896, which was less than ten years before this bill was filed.

We are of opinion that under the foregoing authorities, as E. B. Millard was still liable upon the notes, the mortgage could still be foreclosed to enforce its payment.

It is contended that the proof of these payments of interest was not competent against the heirs of Mrs. Millard, and therefore that it is not established as against them that this note was still alive when the bill to foreclose was filed. Mrs. Holroyd ceased to own this note about five years after its date, and it then became the property of her brothers, Dillon S. Brown and Charles A. Brown, constituting the firm of Brown and Brown, bankers, at Genoa. She did not indorse the note to them. Mrs. Holroyd and each of the Browns were witnesses, and Dillon S. Brown testified that E. B. Millard paid to him on January 12, 1897, the last interest indorsed upon the note. It is contended that Mrs. Holroyd was not a competent witness against the heirs because she owned the legal title to the notes, and that the Browns were not competent witnesses against the heirs because they owned the equitable title; and that the other evidence should be rejected, and then the payment of interest is not proven. There are in this record several answers to these contentions.

First, no such objection was made at the hearing. Most of the testimony of these witnesses was given without any objection whatever being interposed. The defendants apparently expected to profit by the testimony of these parties. They had a right to permit these parties to testify without objection, if they desired. We do not think the question of their competency can be raised in this court by the adult heirs for the first time. Second, such objections as were made while these witnesses were testifying were general objections by all the defendants. E. B. Millard was one of these defendants. All of this evidence was competent as against him. The general objection by all the defendants could not therefore be sustained. Third,

we are disposed to hold that there is in the record enough testimony which would have been competent against the heirs, if they had specially objected, to establish the last payment of interest by Millard. One witness, who was entirely competent and had no interest in the suit, testified that this note first came into her hands in the course of her business as general clerk and bookkeeper and stenographer for Brown and Brown, in March, 1900, and that it then bore the indorsement of interest which now appears upon the back thereof, and that she saw it and handled it several times a year thereafter, and no change was made. Certain documents are in evidence, including the pass-book of E. B. Millard, in the bank, which tend to show the payment of this interest by him out of his bank account with Brown and Brown on January 12, 1897. But, fourth, we question whether it was necessary that the proof of the payment of interest by Millard at the time mentioned should be competent as against the heirs. All that the complainant needed to show was that Millard was still liable upon the note when this bill was filed, by evidence which would hold him. Suppose that complainant had at the same time brought a suit at law against Millard on this note. On the trial of that suit Mrs. Holroyd and the Browns would have been competent witnesses to establish that the note was still due and unpaid, and to overcome any plea of the Statute of Limitations he might file by testifying that he paid this interest at the time mentioned. If such a judgment had been obtained against him, that would have been competent proof in this action to show that he is still liable upon the note, and that therefore the mortgage can be foreclosed. We are therefore disposed to hold that if evidence that bound him showed that the note was still alive, that would authorize a foreclosure.

The hearing of this cause in the court below was fragmentary, proofs being offered on different occasions. It seems that on one of these times the guardian

*ad litem* examined a witness or two as if for the complainant. The certificate of evidence recites that he appeared for the complainant with the attorney whose name is signed to the bill as complainant's solicitor. He made one or two objections to testimony, which objections it is now urged were not favorable to the minors. It is urged that a reversal should be had because of this. It is said in explanation that he had forgotten that he was guardian *ad litem,* and acted temporarily for the complainant's solicitor when the matter was called up in his absence. The certificate of evidence also shows that J. B. Stephens appeared for the defendants, which naturally means for all the defendants. He filed a plea, not only for the adult defendants, but for one of the two minors. The interests of all the heirs at law were exactly alike, and those interests were ably and properly defended. The guardian *ad litem* had a right to ask questions and make objections. No interests of his minors have been sacrificed or have lacked proper protection. The only thing the guardian *ad litem* could have done which was not done, either by him or by the solicitor for the adult heirs, was to make a specific objection to the testimony of Mrs. Holroyd and the Browns on the ground that they were not competent witnesses against the heirs; and what we have already said indicates our belief that the interposition of that objection would not have prevented the present decree, though it might have put the complainant and the equitable owners of the note upon their guard to present other competent evidence of payment. We think the record indicates that the solicitor for the heirs considered it to their advantage to permit Mrs. Holroyd and the Browns to testify. We do not approve of the course pursued by the guardian *ad litem,* but we are of opinion that the interests of the minor defendants were fully protected.

Finding no reversible error in the record, the decree is affirmed.

*Affirmed.*