## Esther Holmes, Appellant, v. Albert L. Bartlett et al., Appellees.

## Gen. No. 5402.

1. STATUTE OF LIMITATIONS—*what not defense to foreclosure.* In this state, so long as a note is kept alive by any person authorized to keep it alive by payments or otherwise, a mortgage securing the note remains valid, and the personal representative of a decedent may stop the running of the statute of limitations either by part payment, a promise to pay or such an acknowledgment of the debt as will imply a promise to pay.

2. STATUTE OF LIMITATIONS—*who authorized to keep note alive.* The executor of the maker empowered to run the business of such maker after his death has power to keep alive by payments a note secured by mortgage given by the testator in his lifetime.

Foreclosure. Appeal from the Circuit Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the October term, 1910. Reversed and remanded with directions. Opinion filed March 16, 1911.

**Statement by the Court.** On November 8, 1886, Thomas Derwent executed a note for $5,000 payable to the Rockford Insurance Company two years after its date with interest, and at the same time he executed a mortgage on certain parcels of real estate in the city of Rockford to secure the note. The mortgage was recorded November 10, 1886, in the recorder's office, in Winnebago county. Thomas Derwent died testate October 9, 1891. The will provides amongst other things:

"I desire all my property kept intact as hereinafter stated for the purpose of paying off my indebtedness and to that end, I hereby give, devise and bequeath all my property and estate of every name and nature to my executor hereinafter named to have and to hold the same in trust, as follows:

"(1)  To carry on any business in which I may be engaged at the time of my decease and to lease my property and to so manage, have, hold, lease and control it as to produce the best possible income in the judgment of my executor.

"(2)  Out of the rents and income annually, to pay first the expenses of this trust, all taxes, reasonable and necessary repairs and improvements on said property and apply annually so far as may be all the rest of such income and rents in paying off the debts and liens on my property.

"(3)  Whenever in the judgment of my said executor it is deemed best to sell any or all of such trust property, the same may be done, and the proceeds derived from such sale shall be paid, so far as may be, upon such indebtedness and liens.  Whenever such indebtedness shall be so paid and such liens discharged or sooner if deemed desirable by my said executor, I direct that said trust be determined and ended and all my property and estate (subject to said trust) be divided and distributed as follows:

"To my son, Thomas J. Derwent, an equal one fourth thereof; to my daughter, Addie Derwent, a like one fourth thereof, to my said son Luther Derwent, a like one fourth thereof, and to my grand children or

the survivor of them, if one be dead, Mabel E. Derwent and Walter E. Derwent share and share alike, the other one fourth thereof. In case where said trust is ended, any of said legatees or devisees be dead, leaving child or children, then living, such child or children share and share alike shall take such deceased one's share.

"I constitute Luther Derwent executor and trustee of this will   *   *   *   with full power to sell and properly convey any real or personal estate in his discretion for the purpose of executing this will and carrying out these provisions. In no event, shall such trust continue for a longer term than ten years after my death."

The will was probated and letters testamentary, issued to Luther Derwent, November 12, 1891. The $5,000 note was never presented to the Probate Court as a claim against the estate.

On June 23, 1894, Luther Derwent as executor conveyed to Albert L. Bartlett a part of the premises described in the mortgage by a deed containing a provision that the premises conveyed are subject to the mortgage made by Thomas Derwent to the Rockford Insurance Company   *   *   *;   that the principal of said mortgage is wholly unpaid, and the said Bartlett as a part of the consideration for the deed assumes and agrees to pay said sum and interest from the date of the deed. This deed is signed by Derwent as executor and by the grantee. Albert L. Bartlett afterwards conveyed the premises, so conveyed to him, to the A. L. Bartlett Company by a quit-claim deed, which provided that the grantee does not assume said mortgage.

On December 29, 1906, Luther Derwent as executor conveyed the remainder of the premises described in the mortgage executed by the deceased, Thomas Derwent, to Thomas Derwent, Adaline Derwent and Luther Derwent. In November, 1904, Eliza Fassett was negotiating with the holder of the $5,000 note and mortgage for their purchase but refused to purchase them without a statement of the amount due made by

the representative of the Derwent estate.   On November 21, 1904, Luther Derwent, executor, executed an instrument, as follows:

"This is to certify that there remains due on the principal of the mortgage dated November 19, 1886, and recorded in Book 91 of Mortgages, page 20, of the Recorder's office of said County, Four thousand five hundred dollars and no cents, and that the payment of the same is extended as to Five Hundred Dollars of the principal sum, two years from this date, and as to the remainder of said principal sum three years from this date, with interest thereon at six per cent per annum payable semi-annually.   The above statement is correct to the best of my knowledge and belief. Estate of Thomas Derwent by Luther Derwent, Executor."

Eliza Fassett then bought the note which was subsequently thereto sold by her to Esther Holmes, the complainant.   The executor and trustee paid the interest on the note up to June, 1894, and continued to act in such capacity until January, 1908, when he filed a final report in the estate and was discharged.   Albert L. Bartlett made various payments on the note from the date of the deed to him down to May, 1908.

Esther Holmes filed this bill to the October term, 1908, of the Winnebago Circuit Court, to foreclose the mortgage executed by Thomas Derwent, deceased, against all the property described in it, and made the necessary allegations and parties.   Thomas J. Derwent and his wife Emma C., Luther Derwent and his wife Emma W., and Adaline Derwent answered the bill setting up the statute of limitations.   Albert L. Bartlett and wife and the A. L. Bartlett Co. answered denying the allegations of the bill.   The court on the hearing entered a decree of foreclosure in favor of the complainant against the real estate conveyed by Thomas Derwent as executor to Albert L. Bartlett for $4,450.99, the amount due on the note with solicitor's fees, but denied her a lien on the portions of the property conveyed by the executor to the devisees

under the will of the deceased, holding that the Derwents took the property conveyed to them, freed from the lien of the mortgage because of the statute of limitations. The complainant appeals from that decree and assigns for error, that the court erred in not granting to her a lien (1) on all the property described in the mortgage and (2) on that portion of the property conveyed by the executor to himself.

Fisher & North, for appellant.

B. H. Garrett and A. D. Early, for appellees.

Mr. Justice Thompson delivered the opinion of the court.

There is no question concerning the facts in this case. The only question presented for our consideration is whether the statute of limitations pleaded by the devisees, the grantees of the executor of the mortgagor, is a defense to the foreclosure suit. The debt is the principal thing and the mortgage but an incident attached to the debt. The executor continued to act in the capacity of executor and trustee of the estate of the mortgagor until January, 1908. By the terms of the will the executor had full power and authority to continue the business and manage the estate for ten years after the death of the testator, or until October 9, 1901. The will conveyed the title to all the real estate of the testator to the executor in trust. The executor paid the interest on the note up to June 23, 1894, the time he conveyed part of the premises to Albert L. Bartlett. The executor contracted with Albert L. Bartlett and obligated him to pay the note and interest. By the deed made to Bartlett he had the right and it was his contractual duty to pay the note. By the terms of the will the executor had the right to keep the note alive until October 9, 1901, and any payment made within that time, by any person authorized by him to make such payment would have the same effect as if made by the executor. Waughop v. Bartlett, 165 Ill. 124.

On November 21, 1904, when the executor signed the certificate that $4,500 was unpaid on the note, he still held the title to all the remaining real estate covered by the mortgage that had not been conveyed to Bartlett, and was still acting as trustee and executor of the estate. While the will provided that the trust should not continue for more than ten years after the death of the testator, it does not mean that at the end of ten years the trust shall automatically cease, but it was his duty to close the trust within that time and interested parties might thereafter compel him to close the trust. The object of Eliza Fassett in getting the certificate made by him before she bought the note, obviously was to get from the executor, who still held title to all the real estate covered by the mortgage that he had not conveyed to Bartlett, a statement showing that the note and mortgage were still in force as to the real estate, the title of which was still held by the executor. The instrument executed by the executor at that time apparently was a consent to an extension of time against such real estate.

In this state, so long as a note is kept alive by any person authorized to keep it alive by payments or otherwise, a mortgage securing the note remains valid, and the personal representative of a decedent may stop the running of the statute of limitations either by part payment, a promise to pay or such an acknowledgment of the debt as will imply a promise to pay. Kraft v. Holzmann, 206 Ill. 548; Waughop v. Bartlett, *supra;* Whittaker v. Crow, 132 Ill. 627; Emory v. Keighan, 88 Ill. 482; Roberts v. Tunnell, 165 Ill. 631; Murray v. Emery, 187 Ill. 408; Holroyd v. Millard, 142 Ill. App. 392; Ott v. Flinspach, 143 Ill. App. 61; Perry v. Horack, 63 Kan. 88; Jackson v. Longwell, 63 Kan. 93; Skinner v. Moore, 64 Kan. 360. We are of the opinion that the payments made by Bartlett by the authority and procurement of the executor under the contract in the deed to Bartlett and the acknowledgment of the indebtedness made by the executor in 1904, kept the note alive and tolled the running of the statute. It is

not necessary to say anything concerning the undivided third part conveyed by the executor to himself since that is included in the deed to his brother and sister. with himself. The court erred in decreeing that the Derwents held the property conveyed to them freed from the lien of the mortgage. The decree is reversed and the cause remanded with instructions to the trial court to enter a decree of foreclosure against all the real estate covered by the mortgage, but that the real estate conveyed to Albert L. Bartlett be first sold to pay the indebtedness, and if that be insufficient, then, that the real estate conveyed to the Derwents, or such part thereof as is necessary, be sold to pay the deficiency remaining after the sale of the real estate conveyed to Bartlett.

*Reversed and remanded with directions.*